415 S.E.2d 271

David L. WILLIAMSON, Plaintiff Below, Appellee,

v.

SHARVEST MANAGEMENT COMPANY, a Corporation, dba Rock Creek Carry-Out, Defendant Below, Appellant.

No. 20276.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 28, 1992.

Decided Feb. 28, 1992.

Larry W. Blalock, Lucinda L. Fluharty, Jackson & Kelly, New Martinsville, for appellant.

Jerry W. Cook, Cook & Cook, Madison, for appellee.

McHUGH, Chief Justice:

Sharvest Management Company, d/b/a Rock Creek Carry–Out (hereinafter Sharvest), appeals from an order of the Circuit Court of Boone County denying its motion for judgment notwithstanding the verdict in a wrongful discharge action. Sharvest contends that the circuit court should have granted its motions for a directed verdict and for judgment notwithstanding the verdict on the grounds that there was no employment contract between Sharvest and its former employee, David L. Williamson, and that even if one did exist, the silence of the contract regarding the duration of Mr. Williamson's employment rendered him an at-will employee. Upon review of the record before us, we conclude that the judgment of the Circuit Court of Boone County should be reversed.

I

The facts established at the trial in this case show that Rock Creek Carry–Out is a convenience store located near Madison, West Virginia, which is in the business of selling gasoline, groceries and other items. Sharvest provides management services to Rock Creek Carry–Out. Before Rock Creek Carry–Out began its business operations, Jeff Hoops, a co-owner of Sharvest, was responsible for overseeing the initial organization and development of the store, which included hiring a manager to supervise the store's operation.

Mr. Williamson, who was an acquaintance of Mr. Hoops, had inquired on several occasions as to whether Mr. Hoops could assist him in obtaining employment at the coal company where Mr. Hoops was employed as vice-president. Mr. Hoops subsequently advised Mr. Williamson that there was a position available for manager of Rock Creek Carry–Out. Mr. Williamson expressed an interest in that position. Mr. Hoops later consulted with the other owners of Sharvest, who agreed to hire Mr. Williamson as manager.

Mr. Hoops then met with Mr. Williamson to discuss the details of his employment. At this meeting, Mr. Hoops gave Mr. Williamson a piece of paper upon which Mr. Hoops, in his own handwriting, had listed Mr. Williamson's base salary of $800.00 per month, a profit sharing plan, a Christmas bonus based on performance, insurance, the wages of the other employees, and the daily hours during which the store was to be in operation. The piece of paper was

not dated nor did it bear anyone's signature. Furthermore, it did not indicate the duration of any employment term.

Mr. Williamson fulfilled his responsibilities in preparing the store to begin operations and in interviewing prospective employees. The store opened in May of 1988 and Mr. Williamson was in charge of the store's daily operations. His duties included maintaining inventory, making bank deposits, and supervising the other employees.

Shortly after the store opened, however, Mr. Hoops became aware of some problems at the store. Mr. Hoops testified that the store was not organized properly, that cleanliness was a problem and that the inventory of common items was inadequate. One of the former stockholders in Rock Creek Carry–Out, Kermit Donald Wooten, also testified that on two separate mornings during the first week in July of 1988, the store was closed when he stopped to purchase gasoline during the scheduled business hours. Furthermore, Rebecca Nelson, who was employed as one of the clerks, claimed that there was never enough milk for the customers and that she was performing several of Mr. Williamson's duties.

Mr. Hoops then decided to implement a co-management format at the store in order to resolve these problems. Mr. Hoops and another co-owner of the store, Carl McCallister, scheduled a meeting on July 19, 1988, to explain the reorganization to the employees. Under the new format, Mr. Williamson, Ms. Nelson and Steve Cooper, another clerk at the store, shared management responsibilities. Mr. Williamson's salary, however, was reduced by $175.00 per month so that the wages received by Ms. Nelson and Mr. Cooper could be raised to meet his salary.

Approximately one week after the co-management format was implemented at the Rock Creek Carry–Out, Ms. Nelson lodged additional complaints with Mr. Hoops regarding Mr. Williamson's performance as a co-manager. Ms. Nelson claimed that Mr. Williamson had left work without properly storing perishable groceries which had been delivered that day and had turned the temperature setting on the hot dog machine to the highest setting, causing it to burn. She also claimed that Mr. Williamson took a hot dog and a bag of chips when he left work without paying for them. Mr. Hoops then determined that Mr. Williamson's employment should be terminated.

Thereafter, Mr. Williamson filed a complaint against Sharvest alleging that the piece of paper given to him by Mr. Hoops was a contract of employment guaranteeing him employment for life and that Sharvest breached that contract when it discharged him. A trial was held before a jury and at the close of Mr. Williamson's case, Sharvest made a motion for a directed verdict. The trial court denied this motion and Sharvest then presented its case. Sharvest renewed its motion for a directed verdict after all of the evidence was presented to the jury, but the circuit court denied the motion.

The jury then found in favor of Mr. Williamson and awarded him $150,000.00 in damages. Sharvest later made a motion for judgment notwithstanding the verdict, or, in the alternative, a new trial, which was also denied by the circuit court by order entered on January 25, 1991. It is from that order that Sharvest now appeals.

## II

The dispositive issue in this appeal is whether Mr. Williamson had a lifetime employment contract with Sharvest. Sharvest contends that no contract of employment existed between Mr. Williamson and Sharvest, and that even if one did exist, its silence with regard to the duration of employment rendered Mr. Williamson an at-will employee. Mr. Williamson maintains that the issue of whether a contract existed was a question of fact for the jury and that the jury concluded Mr. Williamson had an employment contract for life.

This Court has traditionally recognized that an employment which is of an indefinite duration is rebuttably presumed to be a hiring at will, which is terminable at

any time at the pleasure of either the employer or the employee. *Cook v. Heck's Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986); *Wright v. Standard Ultramarine & Color Co.*, 141 W.Va. 368, 90 S.E.2d 459 (1955). We articulated this rule in syllabus point 2 of *Wright:* "When a contract of employment is of indefinite duration it may be terminated at any time by either party to the contract." The burden is on the party asserting that the employer-employee relationship was other than terminable at will to rebut the presumption that the employment was terminable at will. *Suter v. Harsco Corp.*, 184 W.Va. 734, 403 S.E.2d 751 (1991).

■ There are other factors, in addition to those which affect the enforceability of employment contracts in general, that must be taken into consideration to ascertain whether an implied employment contract for life exists, as Mr. Williamson has alleged in the present case. Courts have recognized that lifetime employment contracts are extraordinary and that an offer for lifetime employment must be expressed in clear and unequivocal terms before a court will conclude that an employer intended to enter into such a weighty obligation. *Vance v. Huff*, 568 So.2d 745, 749 (Ala.1990); *Rowe v. Montgomery Ward & Co., Inc.*, 437 Mich. 627, 473 N.W.2d 268, 273 (Mich.1991); *Shebar v. Sanyo Business Systems Corp.*, 111 N.J. 276, 544 A.2d 377, 381–82 (1988).

Many jurisdictions have recognized that implied lifetime employment contracts may be enforceable where the employee furnishes sufficient consideration in addition to those services incident to the terms of his or her employment.[1] *Gesina v. General Electric Co.*, 162 Ariz. 35, 780 P.2d 1376, 1377–78 (Ct.App.1989) (employee who gave up valuable security of union representation to work in non-union shop only after he had been assured lifetime employment by employer furnished sufficient considera-

tion); *Brawthen v. H & R Block, Inc.*, 52 Cal.App.3d 139, 124 Cal.Rptr. 845, 851–52 (1975) (detriment, in displacing family and foregoing other business and contracts, where bargained for, constituted sufficient consideration for permanent employment); *Davies v. Martel Laboratory Services, Inc.*, 189 Ill.App.3d 694, 136 Ill.Dec. 951, 952–53, 545 N.E.2d 475, 476–77 (1989) (employee's promise to obtain MBA and to serve as member of employer's "president's council" was sufficient consideration for employer's promise of permanent employment); *Wolfe v. Graether*, 389 N.W.2d 643, 652–53 (Iowa 1986) (employee's forbearance in consenting to conversion of partnership in which he was a partner to professional corporation in which he would become employee without similar rights to those of his former partners was sufficient additional consideration); *Chesapeake & Potomac Telephone Co. v. Murray*, 198 Md. 526, 84 A.2d 870, 873 (1951) (mere giving up of a job, business or profession by one who decides to accept contract for life employment is but an incident necessary on his part to place himself in a position to accept contract for life employment); *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn.1983) (employee must furnish additional consideration which is uncharacteristic of the employment relationship itself); *Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 526 A.2d 1192, 1202 (1987) (the presence of additional consideration is only a single factor, although an important one, which must be considered to ascertain intent); *see* Robert A. Brazener, Annotation, *Validity and Duration of Contract Purporting to be for Permanent Employment*, 60 A.L.R.3d 226 § 3 (1974 & 1991 Supp.) (listing all jurisdictions which have recognized the rule). Although West Virginia has not expressly adopted the rule, it was briefly discussed in *Wright.*[2]

---

1. The rule of additional consideration is to be applied where the parties' intent regarding lifetime employment is unclear, but where the parties' intent is clearly manifested there is no requirement for additional consideration. *Mar-*

*tin v. Federal Life Ins. Co.*, 109 Ill.App.3d 596, 65 Ill.Dec. 143, 148, 440 N.E.2d 998, 1003 (1982).

2. *Wright* involved an employee who intended to quit his job but decided to continue to work for the employer in consideration of the employer's

Ordinarily a contract of employment for as long as an employee satisfactorily performs his duties is of indefinite duration and terminable at will by either party *unless such contract is supported by a consideration other than the obligation of service to be performed by the employee and the obligation of the employer to pay wages or salary for such service.*[3]

141 W.Va. at 381, 90 S.E.2d at 467 (emphasis supplied). *See also Tow v. Miners Memorial Hospital Association, Inc.*, 199 F.Supp. 926 (S.D.W.Va.1961) (applying West Virginia law). The rule regarding additional consideration for lifetime employment contracts was essentially designed by courts to test the parties' intent. *Savarese v. Pyrene Manufacturing Co.*, 9 N.J. 595, 89 A.2d 237, 240 (1952).[4]

The existence of a contract is generally a question of fact for the jury. Syl. pt. 4, *Cook, supra.* However, as we recognized in *Cook,* the trial court is justified in removing the issue of whether a contract exists from the jury where the employee has failed to establish a *prima facie* case. 176 W.Va. at 371, 342 S.E.2d at 457.

■ We conclude, therefore, that an implied employment contract may be enforceable where the employee furnishes suffi-cient consideration in addition to those services incident to the terms of his or her employment. However, if the intent of the parties is clear and unequivocal that a lifetime employment contract exists, there is no requirement for additional consideration.

■ In the case now before us, there was not sufficient evidence from which the jury could have found the existence of an implied employment contract for life. First and foremost, there was no contract expressing in clear and unequivocal terms that the employment would be for life. The piece of paper with Mr. Hoops' handwritten notations which Mr. Williamson claims to be a lifetime employment contract does not bear any date or duration of employment nor does it bear any person's name or signature. Moreover, there was absolutely no evidence presented by Mr. Williamson showing that he provided any services additional to those contemplated by his employment. There was no additional consideration given by Mr. Williamson to support a lifetime employment contract. Furthermore, there was no evidence presented by Mr. Williamson of any provisions which altered the "at-will" nature of his employment with Sharvest.[5] Even the alleged statements by Mr. Hoops to Mr.

---

promise of a retirement income plan and other benefits.

**3.** An example of what constitutes sufficient consideration for an employment contract for life can be found in *Rhoades v. Chesapeake & Ohio Railway Co.*, 49 W.Va. 494, 39 S.E. 209 (1901). *Rhoades* involved an employee whose leg was amputated as a result of an injury he sustained at work while assisting in replacing a derailed freight car on the track. The employee claimed that the injury was caused by the employer's negligence. The employer and the employee entered into an agreement whereby the employee released his claim against the employer for damages resulting from his injury in consideration for the employer's promise that the employer would give work to the employee as long as his work was satisfactory. This Court essentially held that the employee had paid in advance for the option to do such work for the employer as he was able to do and that he could not be discharged without cause.

**4.** We note that, even if there is a showing of sufficient consideration for a lifetime employment contract, the employer does retain the right to terminate a contract for lifetime employment "for cause." Annot., 60 A.L.R.3d 226 § 2[a], at 236 (1974); *see also* 53 Am.Jur.2d *Master and Servant* §§ 49–59 (1970).

**5.** The Washington Supreme Court in *Roberts v. Atlantic Richfield Co.*, 88 Wash.2d 887, 568 P.2d 764, 769–70 (1977), recognized that some states, although not completely abandoning the "at will" employee doctrine, have found circumstances when the discharge of an "at will" employee was inconsistent with public policy. The Court cited *Petermann v. Local 396, International Brotherhood of Teamsters,* 174 Cal.App.2d 184, 344 P.2d 25 (1959); *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973); and *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512 (1975).

In the case now before us, Mr. Williamson's discharge did not violate any public policy. Mr. Williamson's employment as store manager was terminated because of "failure to perform manager duties and lack of skills." Mr. Williamson acknowledged at the trial that he "had no experience at this job" and "had never done anything like that."

Williamson that he would "take care" of him as long as he performed his duties satisfactorily were not definite enough to create a lifetime employment contract.

The trial court should direct a verdict in favor of the defendant when the plaintiff fails to establish a *prima facie* right to recover as we pointed out in syllabus point 3 of *Hinkle v. Martin*, 163 W.Va. 482, 256 S.E.2d 768 (1979): " 'When the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right of recovery, the trial court should direct a verdict in favor of the defendant.' Point 3, Syllabus, *Roberts v. Gale*, 149 W.Va. 166[, 139 S.E.2d 272] (1964)."

Clearly, Mr. Williamson's evidence, even when viewed in a light most favorable to him, failed to establish a *prima facie* right to recovery. Thus, the trial court should have directed a verdict in favor of Sharvest.

Thus, for the reasons stated herein, we conclude that the judgment of the Circuit Court of Boone County should be reversed.[6]

Reversed.

---

**6.** As its second assignment of error, Sharvest contends that the trial court erred in denying Sharvest's motion for judgment notwithstanding the verdict because the jury returned a verdict in favor of Mr. Williamson based upon insuffi-cient evidence and in disregard of the instructions on the applicable law. Our conclusion that Mr. Williamson failed to establish a right to recovery and that a directed verdict should have been granted to Sharvest disposes of this issue.