425 S.E.2d 226

**Beulah SAYRES, Timothy Sayres, Jackie Rollyson, Cynthia Sayres, G. Michael Sayres, Donna Sayres, Charles Chesser, Gerald Lee Sayres, Mary Wamsley, and Jean Riffle, Plaintiffs Below, Appellees,**

v.

**Jerome BAUMAN, Robert Baum, William Randles, and Cablentertainment, Defendants Below, Appellants.**

**No. 20864.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 23, 1992.

Decided Dec. 18, 1992.

---

LaVerne Sweeney, Grafton, Franklin D. Cleckley, Morgantown, for appellees.

Anita R. Casey, Robert P. Martin, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, for appellants.

WORKMAN, Justice:

The Appellants, Jerome Bauman, Robert Baum, William Randles, and Cablentertainment, appeal from a judgment order entered on April 24, 1991, upholding a jury's verdict that they breached an oral contract of employment with Appellees, Beulah Sayres, Timothy Sayres, Jackie Rollyson, Cynthia Sayres, G. Michael Sayres, Donna Sayres, Gerald Lee Sayres, and Jean Riffle. Finding insufficient evidence to establish the existence of any contract of employment, we reverse the decision of the circuit court.

In August of 1981, Cablentertainment purchased Midwest CATV Corp. ("Midwest"). Midwest had been the owner and operator of certain cable entertainment systems located in West Virginia, including the systems which had employed the Appellees prior to August 1981. Following the purchase, each of the Appellees was hired by Cablentertainment. The Appellees continued to be employed by Cablentertain-

ment until November 1982 when all of the Appellees were discharged because of a newly-adopted nepotism policy.[1]

As a result of their discharge, the Appellees initiated a civil action in the Circuit Court of Harrison County, alleging that they had been guaranteed continued employment with Cablentertainment for an indefinite and unspecified period of time. The Appellees differed in their testimony concerning the length of time for which their respective employment had allegedly been guaranteed. Some of the Appellees were of the opinion that they could terminate their employment with Cablentertainment at any time, but conversely believed that Cablentertainment was irrevocably bound by the alleged oral contract of employment. The Appellees failed to identify the exact terms of their alleged employment contracts, as well as when or where the alleged representations or assurances were made by Cablentertainment. Neither during their employment with Midwest nor their subsequent employment with Cablentertainment did any of the Appellees have a written contract of employment with either cable system. Additionally, the parties are in agreement that there are no contemporaneous memoranda of the alleged oral contracts nor any employee handbooks which might impact upon these issues.

On March 11 and 12, 1991, the Appellees proceeded to trial solely on the issue of liability[2] arising from their breach of contract theory. At the conclusion of the Appellees' evidence, Cablentertainment moved for a directed verdict. The trial court granted the motion only as to Charles Chesser. Following the conclusion of Cablentertainment's case, it renewed its motion for a directed verdict and the motion was granted as to Mary Wamsley, but denied as to the remaining Appellees. At the conclusion of all the evidence, instructions of the court, and argument of counsel, the jury was presented with two special interrogatories. The jury responded affirmatively to each of the following interrogatories:

1. Do you the jury find from clear and convincing evidence that the plaintiffs and Cablentertainment entered into an oral contract whereby Cablentertainment agreed to employ each and every one of the plaintiffs?

2. Do you the jury find from clear and convincing evidence that the contract was breached by the defendants on or about November 1, 1982?

Cablentertainment moved for a new trial on June 6, 1991, on the grounds that the jury verdict was contrary to the evidence and the law. In an order entered on June 17, 1991, the circuit court denied the motion for a new trial but stayed further proceedings necessary to resolve the issue of damages pending the outcome of this appeal. Accordingly, the Appellants seek the reversal of the jury verdict finding the existence of an oral contract of employment between themselves and the Appellees.

I.

The law on "at will" employment is both clear and well-defined in West Virginia. Individuals employed pursuant to an oral agreement in which the expected duration of employment was never specified are considered "at will" employees. *See Harless v. First Nat'l Bank in Fairmont,* 162 W.Va. 116, 119–20, 246 S.E.2d 270, 273 (1978) (citing *Wright v. Standard Ultramarine & Color Co.,* 141 W.Va. 368, 382, 90 S.E.2d 459, 468 (1955) and *Adair v. United States,* 208 U.S. 161, 28 S.Ct. 277, 52 L.Ed. 436 (1908)). This Court has recognized that an employer may modify the "at will" status of its employees by distributing an employee handbook which contains a definite promise by the employer that he will not discharge his employees except for certain specified causes. *See Cook v. Heck's, Inc.,* 176 W.Va. 368, 373–74, 342 S.E.2d 453, 459 (1986).

---

**1.** Apparently, all of the Appellees are related in some fashion. The Appellees allege that Cablentertainment was fully aware of this fact when it purchased Midwest.

**2.** The trial court ruled that the Appellees' causes of action would be bifurcated as to liability and damages by order entered on January 16, 1991. The issue of damages has not yet been tried.

In reviewing West Virginia cases on employment law, the Northern District of West Virginia in *White v. National Steel Corp.*, 742 F.Supp. 312 (N.D.W.Va.1989), *judgment aff'd in part, rev'd in part*, 938 F.2d 474 (1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 454, 116 L.Ed.2d 471 (1991), noted that:

> *Heck's* does not support the view that an employment contract can be implied solely from past practices, in the absence of affirmative acts, promises, or written representations. Indeed, *Heck's* emphasized that, at least in the handbook area, 'the offer must be definite in form and must be communicated to the offeree.' 342 S.E.2d at 459....
>
> ....
>
> ....
>
> The above-discussed West Virginia cases represent the existing law of that state with regard to implied employment contracts in derogation of an employee's "at will" status. Those cases go no further than to state that representations contained in an employee handbook which are clear and definite and are intended by the employer to be used by employees, can meet the normal requirements for formation of an implied contract. While language in these cases may refer to 'policies' and 'practices' generally, there is no indication that the principles of *Heck's* are intended to apply in any situation other than in one involving a handbook or comparable writing. Seemingly, therefore, West Virginia law requires *some solid evidence that a promise consisting of ascertainable terms has been expressly made.*

742 F.Supp. at 329–30 (discussing *Cook, Conaway v. Eastern Ass'd Coal Corp.*, 178 W.Va. 164, 358 S.E.2d 423 (1986), and *Collins v. Elkay Mining Co.*, 179 W.Va. 549, 371 S.E.2d 46 (1988) (emphasis added)).

Although an employee handbook is not relied upon in this case to prove the existence of the alleged employment contracts, those prior decisions of this Court which address what is required before any statements in such a handbook can actually affect the "at will" relationship are useful in analyzing the case at bar. This Court's most recent discussion of employee handbooks is found in *Suter v. Harsco Corp.*, 184 W.Va. 734, 403 S.E.2d 751 (1991):

> In West Virginia, the law presumes employment to be terminable at will. In Syl. Pt. 2, *Wright v. Standard Ultramarine & Color Co.*, 141 W.Va. 368, 90 S.E.2d 459 (1955), we said: 'When a contract of employment is of indefinite duration it may be terminated at any time by either party to the contract.' The burden is on the party contending that the relationship was other than terminable at will to rebut the presumption of employment terminable at will....
>
> If the presumption in West Virginia were against employment terminable at will, an employer seeking to create an employment at will relationship would have to disclaim guarantees of job security in a very bold and definite way, perhaps with language such as 'Employees serve at the will and pleasure of the employer and can be fired at any time and without any notice, for any reason or no reason at all.' However, because we operate on the opposite presumption—that is, that every employment relation is terminable at will, any promises alleged to alter that presumptive relationship must be *very definite* to be enforceable.

184 W.Va. at 737, 403 S.E.2d at 754 (emphasis in original).

■ The above synopsis of West Virginia cases concerning employee handbooks illustrates that an oral promise which has as its effect the alteration of an "at will" employment relationship must contain terms that are both ascertainable and definitive in nature to be enforceable. In this same vein, we recognized earlier this year in *Williamson v. Sharvest Management Co.*, 187 W.Va. 30, 415 S.E.2d 271 (1992), "that lifetime employment contracts are extraordinary and that an offer for lifetime employment must be expressed in clear and unequivocal terms before a court will conclude that an employer intended to enter into such a weighty obligation." 187 W.Va. at 33, 415 S.E.2d at 274.

■ The parties are in agreement that the Appellees had the burden of demon-

strating that their "at will" employment status was altered. *See Suter*, 184 W.Va. at 737, 403 S.E.2d at 754. Given this Court's holding in *Adkins v. Inco Alloys International, Inc.*, 187 W.Va. 219, 417 S.E.2d 910 (1992) that: "[w]here an employee seeks to establish a permanent employment contract or other substantial employment right, either through an express promise by the employer or by implication from the employer's personnel manual, policies, or custom and practice, such claim must be established by clear and convincing evidence[,]" the Appellees' contract claims should have been subjected to the clear and convincing evidentiary standard. 187 W.Va. at 220, 417 S.E.2d at 911, syl. pt. 3.

▇ An examination of the Appellees' trial testimony demonstrates that they failed to meet their burden of proving by clear and convincing evidence that a promise containing definitive and ascertainable terms was made to each of them. When Carroll Rollyson was asked "what promises were made that you would continue in your employment as long as there was no wrongdoing," she responded "I never had any, ah, like that." Similarly, the following excerpt from Leonora Riffle's trial testimony demonstrates that she could not affirm that she had been promised continued employment for a specified period of time:

Q. Now can you tell the court and jury whether or not at that meeting you felt that the promises that were made to you were that you were going to have a job for more than one year from the date of that meeting?

A. I hoped that I would but I wasn't tied to that. I could've quit if I'd—had found a better job by some—I wasn't seeking, but if I'd found something I could have quit that job and taken another job.

Q. But it's your allegations as plaintiff in this case that you were promised a job at the time of that meeting for longer than one (1) year?

A. He did not say one (1) year.

Q. What is your allegation?

A. I hoped that I would have a job until I retired, but at any time I could've quit or he could've fired me for just cause.

Q. As a plaintiff in this action are you contending that you should have been employed for more than one (1) year past that meeting, that the contract that you entered into between yourself and Cablentertainment was for a duration longer than one (1) year from the date of that meeting?

Is that your contention?

A. Yes, I think the contract could have extended, but I could've quit too or he could've fired me. He'd made that so clear that for just cause that we could be fired.

. . . .

. . . .

Q. So it's your—It's your answer to that question that yes, on the day of that meeting you thought that you—you thought that what your contract was was a contract of employment for more than one (1) year?

A. It could be, but *I can't stipulate exactly what he was thinking or what— And I can't say that he said a period of time. I just took it as indefinitely.* (emphasis added).

Not one of the Appellees testified that he or she was promised job security for any specific period of time or continuing employment pursuant to certain specified conditions. Mary Wamsley Bonecutter's testimony appears to best explain the absence of any definitive terms concerning the alleged oral contract:

Q. What is your testimony that is to the duration of your employment?

A. Just that I had faith, that I trusted just like. *It's just my word from what I took from what they said that my job was secure. . . .*

. . . .

[Q.] Can you tell the court and jury how long your employment was for under what you contend to be your contract?

A. *They didn't say how long.* They just said we would not worry about losing our job. *Nothing's guaranteed for how long, is it? They said you won't*

*lose your job because a new company is buying us out.....* (emphasis supplied).

The only promise that may have been made is the one to which Mrs. Bonecutter testified—"They said you won't lose your job because a new company is buying us out." That statement alone, however, does not convey any promise of continued employment sufficient to convert the status of the Appellees' employment from "at will" to a contract of lifetime employment. The Appellees clearly failed to meet their burden of proof on this issue. *See Suter*, 184 W.Va. at 737, 403 S.E.2d at 754.

## II.

The Appellants alternatively assert that the Appellees' claims were barred by the statute of frauds requirement that any contract which is not to be performed within one year must be reduced to writing to be enforceable. *See* W.Va.Code § 55–1–1 (1992). The Appellees argue that the alleged oral promise is outside the statute of frauds because the contract of employment was capable of being performed within one year. To support this contention, the Appellees maintain that some or all of them could have been terminated for cause following an act of embezzlement which would have thereby ended their employment with Cablentertainment before one year had elapsed.

This Court addressed both the reason for the statute of frauds and the "capable of performance" exception in *Thompson v. Stuckey*, 171 W.Va. 483, 300 S.E.2d 295 (1983). We explained that the objective of the statute of frauds " 'was and is to make difficult the establishment of perjured and fraudulent claims....' " *Id.* at 486, 300 S.E.2d at 298 (quoting P.R. Conway, *Outline of the Law of Contract* 390 (3rd ed. 1968)). Following the discussion of the "capable of performance" exception, an exception which ignores the fact that a contract was not fully performed following one year and instead looks only to whether the contract could arguably be performed within one year, this Court chose not to veer from the historical path of the "capable of performance" exception. *See id.* We did, however, in the name of avoiding injustice, rule that:

henceforth, looking to the policy of the ancient statute of frauds, [we will] require more than an entirely mechanical application of the 'capable of performance' exception. Where a plaintiff seeks to avoid the condemnation of *W.Va.Code*, 55–1–1(f) [1923], if the disputed contract was not in fact performed within one year by the plaintiff, there should be clear and convincing evidence that the contract in fact exists before the court submits the claim to a jury.

171 W.Va. at 486–87, 300 S.E.2d at 299 and at syl. pt. 2. Accordingly, because each of the Appellees was in fact still employed by Cablentertainment one year following the buyout, this Court's ruling in *Thompson* required the trial court to first determine the existence of an employment contract pursuant to the clear and convincing evidentiary standard before submitting the case to the jury. Given our analysis in Section I of this decision, this case should never have gone to the jury because the Appellees failed to prove by clear and convincing evidence the existence of any contract of employment. *See id.*

Based on the foregoing opinion, the decision of the Circuit Court of Harrison County is hereby reversed.

Reversed.