431 S.E.2d 687

**Charles HOGUE, Plaintiff Below, Appellee,**

v.

**CECIL I. WALKER MACHINERY COMPANY, Defendant Below, Appellant.**

**No. 21406.**

Supreme Court of Appeals of West Virginia.

Submitted May 4, 1993.

Decided June 11, 1993.

---

George Lantz, Lantz & Tebay, Parkersburg, for appellee.

Fred F. Holroyd, Holroyd & Yost, Charleston, for appellant.

MILLER, Justice:

This appeal was brought by the defendant below, Cecil I. Walker Machinery Company (Walker) from a final judgment entered on December 11, 1991, by the Circuit Court of Wood County, which affirmed a jury verdict in favor of the plaintiff below, Charles E. Hogue, in an action for wrongful discharge. The plaintiff claimed that his discharge was in violation of Walker's personnel policies set forth in its employee handbook dated February 1, 1981. By special interrogatories the jury found, at the time the plaintiff was terminated, an employment agreement existed "containing a definite promise not to discharge plaintiff except for specified reasons[.]" In addition, the jury found that the two revised versions of the handbook, one issued on August 1, 1986, and the other issued on January 1, 1989, did not apply to the plaintiff's termination. The key issue presented in the case is whether the later revisions of Walker's personnel handbook modified its initial handbook which did not contain a specific disclaimer to the effect that employment was only on an at-will basis.

Mr. Hogue was hired by Walker in September of 1973 to work as a mechanic. At that time, Mr. Hogue was a member of a union, but he did not have an individual employment contract with Walker. On February 1, 1981, the first of three employee handbooks was issued to Mr. Hogue. In 1982 or 1983, Mr. Hogue was promoted from an hourly employee to a branch manager which is a salaried position. At the time of the promotion, the 1981 handbook was in effect. Walker revised its 1981 handbook and issued a second handbook to its employees on August 1, 1986. The handbook was revised a third time and distributed by Walker on January 1, 1989.

In March of 1989, Walker terminated Mr. Hogue's employment.

All three versions of the handbook concluded with a section specifically reserving the right to make periodic revisions "to reflect changes in policies, procedures, and benefits." However, both of the revised handbooks issued in 1986 and 1989 contained disclaimers in the beginning of the handbooks which read: "Because of certain court decisions we advise you that this manual is not a contract for employment unless otherwise stated, but is your employment at will. You are free to terminate your employment at anytime without statement of reason. The company has the same right." Similarly, the last sentence in the revised handbooks provides: "Employees are reminded again, that this handbook is not to be considered a contract of employment or a guarantee of rights or benefits, as these must change as business requires."

■■■ We recognized in *Cook v. Heck's Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986), that an employment relationship that is not based on a contract or governed by statutory provisions is ordinarily an at-will employment and can be terminated by either party. We stated:

"In the realm of the employer-employee relationship, West Virginia is an 'at will' jurisdiction. *Wright v. Standard Ultramarine & Color Co.*, 141 W.Va. 368, 90 S.E.2d 459 (1955). Syllabus point 2 of *Wright* states: 'When a contract of employment is of indefinite duration it may be terminated at any time by either party to the contract.' The 'at will' principle is not wholly unqualified, as we recognized in *Bell v. South Penn Natural Gas Co.*, 135 W.Va. 25, 31–32, 62 S.E.2d 285, 288 (1950): 'Under the law governing the relation of master and servant, an employment, unaffected by contractual or statutory provisions to the contrary, may be terminated, with or without cause, at the will of either party.'" 176 W.Va. at 372, 342 S.E.2d at 457. (Citation and emphasis omitted).

However, in Syllabus Points 3, 5, and 6 of *Cook v. Heck's Inc., supra,* we set out some of the methods by which an at-will employment might be changed to give contractual rights to an employee:

"3. Contractual provisions relating to discharge or job security may alter the at will status of a particular employee."

\*　　\*　　\*　　\*　　\*　　\*

"5. A promise of job security contained in an employee handbook distributed by an employer to its employees constitutes an offer for a unilateral contract; and an employee's continuing to work, while under no obligation to do so, constitutes an acceptance and sufficient consideration to make the employer's promise binding and enforceable.

"6. An employee handbook may form the basis of a unilateral contract if there is a definite promise therein by the employer not to discharge covered employees except for specified reasons."

In setting out these principles, we followed other jurisdictions which have held that an employer may be bound by provisions, express or implied, in employee handbooks or policy manuals with respect to job security and termination proceedings, and we cited the following cases:

"*Thompson v. American Motor Inns, Inc.,* 623 F.Supp. 409 (W.D.Va.1985); *Leikvold v. Valley View Community Hospital,* 141 Ariz. 544, 688 P.2d 170 (1984); *Shah v. American Synthetic Rubber Corp.,* 655 S.W.2d 489 (Ky.1983); *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880 (1980); *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983); *Woolley v. Hoffman–La Roche, Inc.,* 99 N.J. 284, 491 A.2d 1257 [*modified on other grounds,* 101 N.J. 10, 499 A.2d 515] (1985); *Weiner v. McGraw–Hill, Inc.,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982); *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081 (1984); *Ferraro v. Koelsch,* 124 Wis.2d 154, 368 N.W.2d 666 (1985); *Mobil Coal Producing, Inc. v. Parks,* 704 P.2d 702 (Wyo.1985). *See* Annot., 33 A.L.R.4th 120 (1984)." 176 W.Va. at 372, 342 S.E.2d at 457.

*See also Reed v. Sears, Roebuck & Co., Inc.,* 188 W.Va. 747, 426 S.E.2d 539 (1992); *Adkins v. Inco Alloys Int'l, Inc.,* 187 W.Va. 219, 417 S.E.2d 910 (1992); *Collins v. Elkay Mining Co.,* 179 W.Va. 549, 371 S.E.2d 46 (1988).

Subsequently, in *Suter v. Harsco Corp.,* 184 W.Va. 734, 403 S.E.2d 751 (1991), we were presented with a situation in which an employment application contained a prominent disclaimer stating that the employee, if hired, understood that the employment was for no definite period and that it could be terminated at any time without any prior notice. We determined that such a disclaimer was effective and it was not necessary that it be placed in the employer's personnel manual in order to be effectual.[1]

More recently in *Williamson v. Sharvest Management Co.,* 187 W.Va. 30, 415 S.E.2d 271 (1992), we dealt with the issue of whether the manager of a convenience food store had a lifetime contract. His employer gave him a written memorandum which listed the monthly salary, the daily hours of operation of the store, the right to participate in a profit sharing plan, and a Christmas bonus based on performance. It contained nothing as to the terms of employment or the right to discharge. The employer terminated the manager for poor performance, and the manager sued and recovered damages based on his claim of a lifetime contract. We rejected this claim stating that the proof was insufficient: "Courts have recognized that lifetime employment contracts are extraordinary and that an offer for lifetime employment must be expressed in clear and unequivocal terms before a court will conclude that an employer intended to enter into such a weighty obligation." 187 W.Va. at 33, 415 S.E.2d at 274. (Citations omitted).

As yet, we have not had occasion to address the question of whether an employer may supersede an earlier handbook, which gave express or clearly implied contract rights limiting termination, by issuing a subsequent personnel handbook which

contains clear language disclaiming the employment relationship as other than at-will. In several other jurisdictions where the issue has been considered, courts have concluded that a subsequent handbook when issued to employees will alter the earlier handbook. For example, the Michigan Supreme Court determined that such a subsequent alteration was permissible in *In re Certified Question,* 432 Mich. 438, 455–56, 443 N.W.2d 112, 120 (1989), stating:

> "It is one thing to expect that a discharge-for-cause policy will be uniformly applied while it is in effect; it is quite a different proposition to expect that such a personnel policy, having no fixed duration, will be immutable unless the right to revoke the policy was expressly reserved.... In the modern economic climate, the operating policies of a business enterprise must be adaptable and responsive to change."

The Michigan court went on to speak about the illogical consequences of holding that a subsequent modification could not impair rights already set in an earlier handbook:

> "If an employer had amended its handbook from time to time, as often is the case, the employer could find itself obligated in a variety of different ways to any number of different employees, depending on the modifications which had been adopted and the extent of the work force turnover." 432 Mich. at 456, 443 N.W.2d at 120.

The Michigan court did stress that in order for any subsequent modification "to become legally effective, reasonable notice of the change must be uniformly given to affected employees." 432 Mich. at 457, 443 N.W.2d at 120. Moreover, the Michigan court gave this caveat: "[W]e caution against an assumption that our answer would condone changes made in bad faith—for example, the temporary suspension of a discharge-for-cause policy to facilitate the firing of a particular employee in

**1.** Syllabus Point 4 of *Suter* states: "An employer may protect itself from being bound by statements made in an employee handbook by having each prospective employee acknowledge in

his employment application that the employment is for no definite period and by providing in the employment handbook that the handbook's provisions are not exclusive."

contravention of that policy." 432 Mich. at 456–57, 443 N.W.2d at 120.

The Washington Supreme Court in *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wash.2d 426, 815 P.2d 1362 (1991), also recognized the right of the employer to subsequently modify or revoke procedures in a personnel manual, but stressed the requirement of notice to the employees:

> "An employer may unilaterally amend or revoke policies and procedures established in an employee handbook. *Thompson [v. St. Regis Paper Co.*, 102 Wash.2d 219, 229, 685 P.2d 1081, 1087 (1984) ]; *Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 613, 292 N.W.2d 880 [892] (1980). However, an employer's unilateral change in policy will not be effective until employees receive reasonable notice of the change. *Bankey v. Storer Broadcasting Co.*, 432 Mich. 438, 441, 443 N.W.2d 112 [113] (1989)." 117 Wash.2d at 434, 815 P.2d at 1367.

In *Gaglidari*, the discharged employee was not given the changed policies, but the employer argued that copies of the revised policy manual often were left in the employees' lounge. The court determined that this was not reasonable notice to the employee. *See also Ferrera v. Nielsen*, 799 P.2d 458 (Colo.App.1990); *Condon v. American Tel. & Tel. Co.*, 210 Ill.App.3d 701, 155 Ill.Dec. 337, 569 N.E.2d 518 (1991); *Preston v. Claridge Hotel & Casino*, 231 N.J.Super. 81, 555 A.2d 12 (1989).[2]

The common thread running through these cases is that the implied contract theory that modifies at-will employment cannot be used to completely freeze an employer's right to alter or revoke personnel policies to meet changing business conditions. Moreover, to hold that a personnel policy once issued cannot be changed for those employees who were hired during its effective date would mean that an employer's work force could be controlled by several different personnel manuals. Each manual could contain conflicting provisions,

a condition that would hardly be conducive to harmonious labor-management relations.

We agree with other jurisdictions that a subsequent modification may be made unilaterally by the employer, but to make the modification effective the employer is required to give the employees reasonable notice of the changes. Moreover, we adopt the caveat of the Michigan Supreme Court in *In re Certified Question, supra,* that such changes may not be motivated by bad faith or malice to retaliate against a particular employee.

■ Thus, in summary, we conclude that an employer may modify or revoke prior personnel manuals or policies that have created express or implied contract rights as to job security and establish in a subsequent personnel manual or policy that the employment is one at-will. When such a change is made, the employer must give reasonable notice of the change to the employees.

■ In the present case, there was no dispute that the plaintiff was aware of the revisions made in the 1986 and 1989 handbooks. Each handbook contained a clear disclaimer to the effect that there was no contract of employment, and employment was at-will. The employer's motion that the subsequent handbooks superseded the 1981 manual from a legal standpoint should have been granted. Consequently, the trial court erred as a matter of law in not holding that the 1981 contract creating an implied contract of employment under *Cook v. Heck's Inc., supra,* was superseded. The employer was entitled to a directed verdict on this issue in accordance with Syllabus Point 5 of *Adkins v. Inco Alloys International, Inc., supra:*

> " 'When the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right of recovery, the trial court should direct a verdict in favor of the defendant.' Syl-

---

**2.** In several cases, courts in establishing the law that allows for modification of at-will employment have, in the course of their discussions, indicated by way of dicta the employer's right to modify or revoke. *See, e.g., Hoffman–LaRoche,* *Inc. v. Campbell,* 512 So.2d 725 (Ala.1987); *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983); *Arie v. Intertherm,* 648 S.W.2d 142 (Mo.App.1983); *Langdon v. Saga Corp.,* 569 P.2d 524 (Okla.App.1976).

labus Point 3, *Roberts v. Gale*, 149 W.Va. 166, 139 S.E.2d 272 (1964)."

The judgment of the Circuit Court of Wood County is reversed and this case is remanded to the circuit court for entry of an order consistent with this opinion.

Reversed and remanded.