486 S.E.2d 798

**Chrystal F. PLEASANT, aka Chrystal F. Lucas, Plaintiff Below, Appellant,**

v.

**ELK RUN COAL COMPANY, INC., a Corporation, Defendant Below, Appellee.**

No. 23669.

Supreme Court of Appeals of West Virginia.

Submitted April 29, 1997.

Decided May 9, 1997.

Gene Hal Williams, South Charleston, for Appellant.

Daniel L. Stickler, Erin Elizabeth Magee, Jackson & Kelly, Charleston, for Appellee.

PER CURIAM.

This action is before this Court upon an appeal from the final order of the Circuit Court of Boone County, West Virginia, entered on December 9, 1994. The appellant, Chrystal F. Pleasant, was discharged from her employment with the appellee, Elk Run Coal Company, Inc., for absenteeism. The appellant contends, however, that she worked for the appellee under a promise of job security and was discharged without cause. During the trial of this matter, the circuit court determined, as a matter of law, that the appellant was an at will employee of the appellee and not entitled to the protection of being discharged only for cause. Consequently, the circuit court, as reflected in the final order, granted a motion for a directed verdict in favor of the appellee.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, this Court is of the opinion that, under the standard of review concerning directed verdicts and even assuming that the appellant was entitled to the just cause protection, the circuit court acted correctly in granting the directed verdict. Accordingly, the final order is affirmed.

## I

In 1982, the appellant, a resident of Charleston, West Virginia, applied for employment with the appellee, a coal producer with operations in Boone County. Following an application and interview process, the appellant was hired by the appellee and began work in January, 1983. As part of her employment, the appellant was given a handbook entitled *Working With Elk Run Coal Company.* The handbook, sixty pages in length, provided that employees were required to work six days per week but would be given time off for vacations, holidays, sickness, bereavement, jury service and military duty. In addition, the handbook provided that employees could take time off for emergencies or "to deal with the unexpected," subject to approval by the appellee.

Importantly, the handbook evidenced both an intent by the appellee to provide a measure of job security to its employees and an admonition by the appellee concerning employee absences from work. As the handbook stated:

> The opportunity for each of us to work at Elk Run Coal Company will provide the opportunity for a job for our entire working lives. It is the strong desire of Elk Run Coal Company to provide a secure job—secure both in duration and on a day-to-day basis.
>
> . . . .
>
> [S]afety studies link absenteeism to mine accidents and the Company has a need to be assured of a reliable and safe work force. When an employee becomes an absentee, he burdens other employees by causing reassignment of work in order to continue operations.
>
> All employees are responsible for meeting these needs by reporting for work on all regularly scheduled work days, unless absences therefrom are specifically excused.
>
> . . . .
>
> [I]f any Employee is absent from scheduled work for a period of two consecutive days without the permission of the Company, he may be discharged.

Regrettably, the appellant, who initially began as a general laborer and ultimately became a shuttle car operator for the appellee, continually had problems reporting to work. According to the testimony at trial, the appellant was absent sixty-six days in 1983, thirteen days in 1984, fifty-six days in 1985, fifteen days in 1986 and twenty-three days in 1987, prior to her discharge on May 4, 1987. Although most of those absences were excused by the appellee as resulting from sickness, personal leave requests or weather conditions, several of the absences were unexcused. Not included in the above-listed absences of the appellant was a thirty-day suspension, without pay, she received from the appellee in 1985 for two consecutive unexcused absences.

The events resulting in the appellant's discharge occurred in April, 1987 and concerned four consecutive unexcused absences from work. On April 27, 1987, the appellant contacted the appellee by telephone and stated that she was having trouble with her truck and could not make it to work that day (the appellant had been excused from work once before, on October 5, 1983, for vehicle trouble). The following day, April 28, she called the appellant and stated that she would be absent because the truck was being repaired. On April 29, the appellant called the appellee and indicated that, although the truck had been repaired, it was still not operating properly and she could not come to work. Although denied by the appellant, Joe Calicino, an official of the appellee testified at trial that, during the telephone conversation of April 29, he indicated to the appellant that she needed to be at work and that her absence was unexcused. The following day, April 30, the appellant's daughter called the appellee and reported that the appellant would not be in to work because she was in the process of buying a replacement vehicle.

Thereafter, on May 4, 1987, the appellant was discharged from her employment pursuant to the provision of the handbook, quoted above, stating that "if any Employee is absent from scheduled work for a period of two consecutive days without permission of the Company, he may be discharged."

In May, 1989, the appellant filed an action against the appellee in the Circuit Court of Boone County for wrongful discharge. In her complaint, the appellant alleged, *inter alia,* that she worked for the appellee under a promise of job security and was discharged without cause.[1] The appellee denied the allegations of the complaint, and the action went to trial on August 9, 1994. The facts set forth above were largely undisputed by the appellant.

At the close of all of the evidence at trial, the circuit court, upon the appellee's motion, directed a verdict against the appellant and discharged the jury. As the trial court stated to counsel for the appellant: "I think that your client [had] a contract at will and I think that she could be discharged by the [appellee] for any reason not contrary to public policy and we don't have that case here." That ruling was reflected in the final order of December 9, 1994. This appeal followed.[2]

1. Specifically, the appellant's complaint consisted of four counts alleging: (1) gender discrimination, (2) wrongful discharge under a contract of employment, (3) violation of an implied covenant of good faith and fair dealing and (4) the tort of outrage. At the close of the appellant's case-in-chief, the circuit court, upon the appellee's motion, directed a verdict upon the gender discrimination and the tort of outrage counts, without objection by the appellant. At that time, the circuit court also directed a verdict upon the count concerning an implied covenant of good faith and fair dealing. Thus, the trial proceeded only as to count (2) of the complaint, and, at the close of all the evidence, the circuit court directed a verdict for the appellee upon that count. In this appeal, the focus of the appellant is upon count (2), concerning the alleged wrongful discharge under a contract of employment.

2. Important to the circuit court in concluding that the appellant was subject to discharge for any reason not contrary to public policy was the following additional provision of the handbook:
   From time to time, however, problems may arise that require management to take disciplinary action which shall include, *but not be limited to:* equipment damage, insubordination, theft, possession of intoxicants or controlled substances, reporting to work under the influence of intoxicants or controlled substances, unsafe performance of work, fighting, unsatisfactory work performance, unexcused absences, horseplay, failure or refusal to observe Company rules.
   (emphasis added).

## II

A motion for a directed verdict is authorized by Rule 50 of the *West Virginia Rules of Civil Procedure,* and as this Court recently held in syllabus point 3 of *Brannon v. Riffle,* 197 W.Va. 97, 475 S.E.2d 97 (1996):

The appellate standard of review for the granting of a motion for a directed verdict pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo. On appeal, this court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a directed verdict when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a directed verdict will be reversed.

*See also Louk v. Isuzu Motors, Inc.,* 198 W.Va. 250, 256, 479 S.E.2d 911, 917 (1996);

According to the circuit court, the phrase "but not limited to" rendered the handbook indefinite as to the various reasons upon which a discharge of an employee could be based. As stated in syllabus point 6 of *Cook v. Heck's Inc.,* 176 W.Va. 368, 342 S.E.2d 453 (1986): "An employee handbook may form the basis of a unilateral contract if there is a definite promise therein by the employer not to discharge covered employees except for specified reasons."

This Court need not dwell on this point, however, inasmuch as, resolving all inferences from the evidence in favor of the appellant and assuming that a contract of employment was created, the appellant was clearly discharged for cause. We note, nevertheless, that somewhat in contrast to the above language, concerning discipline, cited by the circuit court was a more general, multi-level "Problem Solving Procedure" set forth in the handbook concerning "actions" by the appellee affecting its employees. As the introduction to the Problem Solving Procedure stated:

If you have a question or concern regarding your working conditions or the manner in which a company rule or procedure has been applied, or if you do not fully understand the reason behind any company action affecting you, you are encouraged to seek a resolution of your question or concern through this problem solving procedure.

The relationship of those two provisions of the handbook, i.e., the provision cited by the circuit court and the Problem Solving Procedure, raises issues which we need not address herein.

syl. pt. 2, *Bell v. Vecellio & Grogan, Inc.*, 191 W.Va. 577, 447 S.E.2d 269 (1994); syl. pt. 1, *Delp v. Itmann Coal Company*, 176 W.Va. 252, 342 S.E.2d 219 (1986); Lugar & Silverstein, *West Virginia Rules of Civil Procedure*, p. 371–82 (Michie 1960).

In *Williamson v. Sharvest Management Company*, 187 W.Va. 30, 415 S.E.2d 271 (1992), this Court confirmed the general principle that "an employment which is of an indefinite duration is rebuttably presumed to be a hiring at will, which is terminable at any time at the pleasure of either the employer or the employee." 187 W.Va. at 32–33, 415 S.E.2d at 273–74. *See also* syl. pt. 2, *Wright v. Standard Ultramarine and Color Company*, 141 W.Va. 368, 90 S.E.2d 459 (1955). In this action, however, the appellant contends that her at will status as an employee was modified by the appellee's handbook and that, as a result, she had a contract promising her job security and the protection of being discharged only for cause. Thus, the appellant notes the following language of *Cook v. Heck's Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986): "At will employment status may be contractually modified ... either to establish a specific duration of the employment or to provide a measure of job security to covered workers." 176 W.Va. at 373–74, 342 S.E.2d at 459.[3] In particular, the appellant asserts that, inasmuch as she or her daughter contacted the appellee on each day of her four absences in April, 1987 and inasmuch as she had been excused for vehicle trouble in 1983, her discharge from employment was without cause and, therefore, invalid.

On the other hand, the appellee contends that the handbook merely evidenced an "op-portunity" of continued employment for its employees and that, accordingly, the appellant remained an at will employee. Thus, the appellee asserts that no contract based upon a promise of job security was created. Moreover, the appellee contends that, even if the appellant's absence on April 27, 1987, was excusable (because she had been excused once in 1983 for vehicle trouble), then, assuming that there was an employment contract based upon the handbook, the appellant was discharged for cause for her remaining absences on April 28, 29 and 30, 1987. Specifically, the appellee asserts that the latter three absences "were not the result of emergency circumstances."

■ In *Cook, supra*, this Court recognized that a binding and enforceable contract of employment may be initiated through a promise of job security contained in an employee handbook. As syllabus point 5 of *Cook* states:

A promise of job security contained in an employee handbook distributed by an employer to its employees constitutes an offer for a unilateral contract; and an employee's continuing to work, while under no obligation to do so, constitutes an acceptance and sufficient consideration to make the employer's promise binding and enforceable.

*See also* syl. pt. 4, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995); syl. pt. 2, *Hogue v. Cecil I. Walker Machinery Co.*, 189 W.Va. 348, 431 S.E.2d 687 (1993); syl. pt. 1, *Reed v. Sears, Roebuck & Company, Inc.*, 188 W.Va. 747, 426 S.E.2d 539 (1992); syl. pt. 6, *Collins v. Elkay Mining Co.*, 179 W.Va. 549, 371 S.E.2d 46 (1988).

---

**3.** In addition to contending that she had a contract with the appellee based upon a promise of job security, the appellant also contends that she had a "lifetime employment contract" with the appellee. As syllabus point 2 of *Williamson v. Sharvest Management Company*, 187 W.Va. 30, 415 S.E.2d 271 (1992), states:

An implied lifetime employment contract may be enforceable where the employee furnishes sufficient consideration in addition to those services incident to the terms of his or her employment. However, if the intent of the parties is clear and unequivocal that a lifetime employment contract exists, there is no requirement for additional consideration.

With regard to both the job security and the lifetime employment contract theories, the appellant cites the language of the handbook which states: "The opportunity for each of us to work at Elk Run Coal Company will provide the opportunity for a job for our entire working lives. It is the strong desire of Elk Run Coal Company to provide a secure job—secure both in duration and on a day-to-day basis." As indicated above, however, resolving all inferences from the evidence in favor of the appellant and assuming that a contract of employment was created, the appellant was clearly discharged for cause.

■ This Court is not unmindful that, ordinarily, the question of whether an employee was discharged for cause is not reached unless the circumstances indicate that the employee was working under something more than at will employment. *See Cook, supra.* Here, the circuit court determined as a matter of law that the appellant was merely an at will employee. Nevertheless, viewing the evidence in the light most favorable to the appellant under the *a priori* standard of *Brannon, supra,* and assuming that a contract of employment was created, based upon a promise of either job security or lifetime employment, the record herein demonstrates overwhelmingly that the appellant's absenteeism properly resulted in a "for cause" discharge.

As indicated above, the appellant, throughout her employment with the appellee, had problems reporting to work. In fact, although the appellant acknowledged at trial that the appellee told her that she would be treated fairly as an employee as long as she worked there "and showed up for work," the appellant was suspended, without pay, for absenteeism in 1985. Her discharge in 1987 resulted from four consecutive unexcused absences in April of that year, in violation of the handbook's provision that if any employee is absent from scheduled work "for a period of two consecutive days without the permission of the Company, he may be discharged." Upon her return to work following the four absences, the appellant was given a chance to discuss the circumstances thereof with the appellee. Following the discussion, the decision to discharge the appellant was made.[4] While it is true that the appellant was excused for vehicle trouble on October 5, 1983, that fact is deprived of significance in view of the four subsequent absences in April 1987 and in view of other absences of the appellant from work. In particular, this Court is in agreement with the appellee that, at a minimum, three of the four absences in April, 1987 were not the result of emergency circumstances.

■ As this Court observed in *Cook, supra,* a circuit court, at times, is justified in removing an issue from a jury. 176 W.Va. at 372, 342 S.E.2d at 457. More specifically, this Court held in syllabus point 3 of *Roberts v. Gale,* 149 W.Va. 166, 139 S.E.2d 272 (1964): "When the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right of recovery, the trial court should direct a verdict in favor of the defendant." *See also* syl. pt. 1, *Brannon, supra;* syl. pt. 1, 475 S.E.2d 97, *Farley v. Farley,* 196 W.Va. 434, 473 S.E.2d 149 (1996); syl. pt. 4, *West Virginia Insurance Company v. Lambert,* 193 W.Va. 681, 458 S.E.2d 774 (1995).

Here, the appellant's suspension in 1985 for absenteeism and her testimony at trial demonstrate that she was aware of the importance of reporting to work. Following the appellant's suspension, however, her absences continued to accumulate and resulted in her discharge in 1987. Upon a careful review of the record, and under the standard of review concerning directed verdicts, this Court is of the opinion that the circuit court acted correctly. Accordingly, the final order of the Circuit Court of Boone County, entered on December 9, 1994, is affirmed.

Affirmed.

---

4. During the trial, Larry McKinney, a superintendent of the appellee, testified: "[A]s best I can remember, I told her, I said 'Chrystal, car trouble for four days, that is not going to get it. If you could just tell me, if you can just give me any other reason' and she told me that there was no other reason."