589 S.E.2d 36

Margaret WAYS, Douglas Brill, William E. Crum, Dael Copeland, Gwendolyn Shells, Edgar Carter and Larry Linton, Individually and as Representatives of the Class, Plaintiffs Below, Appellants

v.

IMATION ENTERPRISES CORPORATION, Minnesota Mining and Manufacturing Corporation DBA 3M, Charles Osterlien, Barbara Cederberg, K.C. Lum, Larry Doris, Sam Adams, Dean Stickel and Clarence Ruppenthal, Individually and as Agents of 3M/Imation, and Spectratech International, Inc., Defendants Below, Respondents

No. 31062.

Supreme Court of Appeals of West Virginia.

Submitted June 11, 2003.

Decided July 7, 2003.

McGraw, J., dissented and filed opinion.

West Virginia, Clinton R. Ritter, Esq., Winchester, Virginia, Attorneys for Appellants.

Christopher Robertson, Esq., Jackson & Kelly, Martinsburg, Kathleen M. Mahoney, Esq., David M. Wilk, Esq., Larson–King, LLP, St. Paul, Minnesota, Attorneys for Imation Enterprises Corp., Imation Corp., 3M Company, Charles Oesterlein, Barbara Cederberg, K.C. Lum, Larry Doris & Dean Stickel.

Harry P. Waddell, Esq., Law Offices of Harry P. Waddell, Martinsburg, West Virginia, Attorney for Sam Adams.

Charles F. Printz, Jr., Esq., Bowles Rice McDavid Graff & Love, PLLC, Martinsburg, West Virginia, Attorney for Clarence Ruppenthal.

Sara E. Hauptfuehren, Esq., Rodney L. Bean, Esq., Steptoe & Johnson, Clarksburg, West Virginia, Attorney for Spectratech International, Inc.

## PER CURIAM:

The appellants and plaintiffs below, seven former employees of appellees and defendants below, Imation Enterprises Corporation, Imation Corporation, and Minnesota Mining and Manufacturing Company, appeal the June 5, 2002, order of the Circuit Court of Jefferson County that denied the appellants' motion for class certification in their claims for breach of contract and employment discrimination.[1] After careful consideration of the issues, we affirm the circuit court.

## I.

## FACTS

Each of the seven appellants was formerly employed by the Minnesota Mining and Manufacturing Company, which does business as 3M (hereinafter "3M"), at its Middleway plant near Kearneysville in Jefferson County, West Virginia. The Middleway plant, which opened in 1961, manufactured lithographic

Mark N. Troobnick, Esq., Wright & Sielaty, PC, Lake Ridge, Virginia, Richard G. Gay, Esq., Nathan Cochran, Esq., Law Office of Richard G. Gay, LC, Berkeley Springs, West Virginia, Mark Jenkinson, Esq., Burke, Shultz, Harman & Jenkinson, Martinsburg,

1. This Court has made clear that "[a]n order denying class action standing under Rule 23 of the West Virginia Rules of Civil Procedure may be appealed by the party who asserts such class standing." Syllabus Point 6, *Mitchem v. Melton*, 167 W.Va. 21, 277 S.E.2d 895 (1981).

metal plates [2] used by commercial printers. The appellants were employed at the plant for periods ranging from 15 to more than 30 years.

Effective July 1, 1996, Appellant Imation Enterprises Corporation (hereinafter "Imation") was formed as a result of the "spin off" [3] of certain 3M businesses. Imation owned and operated the Middleway plant from Imation's inception until December 31, 1998, when the plant closed. Prior to the closing, Imation offered its approximately 150 employees [4] two separate severance plan options—a "voluntary plan," and an "income assistance pay plan." According to the appellees, 72 employees accepted the "voluntary plan," and the remaining 88 employees accepted the "income assistance plan." As a

condition of participation in the plan, the employees were required to sign a document titled "General Release Of All Claims—Covenant Not To Sue." [5] In November 1998, Appellee Spectratech International Inc. agreed to purchase certain Middleway plant assets. Spectratech subsequently reopened the plant with a workforce of 28 employees, all of whom were former employees of Imation.

On March 28, 2000, the appellants filed an action in the Circuit Court of Jefferson County against Imation, 3M, Spectratech, and several former employees of 3M and Imation. The eight appellants are:

*Margaret Ways*—a female over the age of 40 years who worked at the Middleway plant for a continual period of 24 years and 11 months;

---

2. As explained in the circuit court's order, these lithographic printing plates,

> were affixed to the drum of large printing presses to transfer images to paper as the drum rotates. The commercial printer developed these printing plates, using chemicals, much like photographs are developed. The traditional printing plates, as manufactured by 3M/Imation, required extensive chemical-based preparation by the commercial printer or end user.

3. A "spin-off" is "a corporate divestiture in which a division of a corporation becomes an independent company and stock of the new company is distributed to the original corporation's shareholders." *A Handbook of Business Law Terms* 558 (1999). According to Imation, since July 1, 1996, it has been a separate company from 3M, with its own listing on the New York Stock Exchange; Imation and 3M are separately incorporated in the State of Delaware; and each files separate disclosures with the Securities and Exchange Commission. Finally, says Imation, it and 3M have no overlapping ownership and have different officers and directors.

4. According to the appellees, not all of the plant employees were employed by Imation. Some were employed in a part of the facility that Imation leased to 3M following the spin-off.

5. According to the subsection of the Release titled "What I Am Releasing,"

> I agree to release all federal, state or local charges, claims, demands, actions or liabilities I now have or might have in the future based on events through the date I sign this Agreement (even if I don't know of them when I sign this Agreement) against Imation of whatever kind including, but not limited to, those related

to my employment with Imation or the termination of my employment. I also agree that I will not file any charge or lawsuit of any kind against Imation, and that I agree any charge or lawsuit already filed on my behalf will be withdrawn or dismissed. I will sign any documents that need to be signed to accomplish that withdrawal or dismissal. I waive the right to receive monetary or other relief awarded in connection with those charges or lawsuits.

> I UNDERSTAND THAT MY RELEASE COVERS, BUT IS NOT LIMITED TO, CLAIMS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT, THE AMERICANS WITH DISABILITIES ACT, TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, ANY OTHER FEDERAL, STATE OR COMMON LAW DEALING WITH EMPLOYMENT, AND ANY CLAIMS BASED ON THEORIES OF CONTRACT OR TORT (SUCH AS DEFAMATION OR EMOTIONAL DISTRESS).

> I understand and agree that if I violate this Agreement by making a claim or filing a lawsuit against Imation, I will pay all costs and expenses that Imation incurs in defending against these claims, including reasonable attorneys' fees. I also agree that I will pay back to Imation the total amount of consideration received under this Agreement if I challenge the validity of this Agreement.

According to the subsection titled "What I am not Releasing,"

> I am not releasing any claims for post-termination benefits, under the provisions of any employee benefit plan maintained by Imation. I also am not waiving any rights I have for events that occur after the date of this Agreement. I understand and agree that I am not being released from my obligations under the Imation "Employee Agreement".

*Douglas Brill*—a male over the age of 40 years who worked at the plant for a continual period of 30 years and five months; *William E. Crum*—a male over the age of 40 years who worked at the plant for a continual period of 18 years and six months;

*Dael Copeland*—a male over the age of 40 years who worked at the plant for a continual period of 30 years and one month; *Gwendolyn Shells*—an African–American female over the age of 40 years who worked for 3M/Imation for a continual period of 24 years and 9 months;

*Edgar Carter*—an African–American male over the age of 40 years who worked at the plant for a continual period of 21 years; and

*Larry Linton*—a male over the age of 40 years who worked at the plant for a continual period of 32 years and two months.

In their complaint, the appellants alleged breach of express and implied oral contracts of continued employment. Essentially, the appellants claimed that the employees at the Middleway plant were promised in a series of meetings with Imation management that if they perfected a new type of lithographic plate, known as a "negative no process plate," [6] their jobs were assured and the Middleway plant would continue as an operational unit; the employees perfected the technology; nevertheless, Imation, in collusion with Spectratech, breached its express and implied promises of continued employment by closing the plant. The appellants also alleged race, gender, and age discrimination in violation of the West Virginia Human Rights Act, W.Va.Code §§ 5–11–1, *et seq.* According to the appellants, Imation engaged in a conspiracy with Spectratech to deny employment offers to the appellants because of their race, sex, and age. The appellants alleged that none of the approximately 17 African–Americans employed by Imation were hired by Spectratech, only three of approximately 47 women were hired, and fewer older workers were hired in comparison to the younger white males who were hired.[7]

By motion dated November 5, 2001, the appellants moved the circuit court to certify their action against the appellees as a class action. According to the appellants, "[t]he overarching class action claims that potentially involve approximately 150 people are Plaintiffs' breach of contract claims, and retaliatory action claims. Subclasses within the overall class are based upon Plaintiff employees' discrimination in employment practices claims based on race, gender, and age." The appellants excluded from the proposed class former employees of Imation who were named as defendants in their complaint. The circuit court denied the motion for class certification by order of June 5, 2002, after it determined that the appellants failed to meet the requirements of Rule 23 of the West Virginia Rules of Civil Procedure.

## II.

## STANDARD OF REVIEW

This Court has held that "[w]hether the requisites for a class action exist rests within the sound discretion of the trial court." Syllabus Point 5, *Mitchem v. Melton,* 167 W.Va. 21, 277 S.E.2d 895 (1981). Accordingly, "[t]his Court will review a circuit court's order granting or denying a motion for class certification pursuant to Rule 23 of the *West Virginia Rules of Civil Procedure* [1998] under an abuse of discretion standard." Syllabus Point 1, *In Re: West Virginia Rezulin Litigation,* 214 W.Va. 52, 585 S.E.2d 52 (2003).

## III.

## DISCUSSION

As a preliminary matter, we note that the appellants spend a substantial por-

---

**6.** A Negative No Process Plate was a new type of chemical-free printing plate technology.

**7.** Subsequently, Imation filed a separate federal lawsuit against the named plaintiff employees and any other former employees who would qualify as a class member. Thereafter, the ap-

pellants amended their complaint to allege that the federal lawsuit was a separate unlawful discriminatory act of reprisal against the appellants, and other employees who may join their lawsuit, under W.Va.Code § 5-11-9(7) of the West Virginia Human Rights Act.

tion of their brief challenging the legality of the releases signed by the employees of Imation pursuant to obtaining severance benefits. The appellants argue that the releases are unconscionable, and that the circuit court erred in ruling that the releases bar class certification of the appellants' claims. Significantly, however, the circuit court has not yet determined the validity of the releases. Our law is clear that "[t]his Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syllabus Point 2, *Sands v. Security Trust Company*, 143 W.Va. 522, 102 S.E.2d 733 (1958). Because the circuit court has not decided the question of the validity of the releases, we decline to consider the matter.

This leaves us with the sole issue of whether the circuit court abused its discretion in determining that the appellants fail to meet the requirements for class certification listed in Rule 23 of the West Virginia Rules of Civil Procedure. According to Rule 23, in part:

(a) *Prerequisites to a class action.* —— One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) *Class actions maintainable.* —— An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) The prosecution of separate actions by or against individual members of the class would create a risk of

(A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties

to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relieve [sic] or corresponding declaratory relief with respect to the class as a whole; or

(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

 This Court has held:

Before certifying a class under Rule 23 of the *West Virginia Rules of Civil Procedure* [1998], a circuit court must determine that the party seeking class certification has satisfied all four prerequisites contained in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and has satisfied one of the three subdivisions of Rule 23(b). As long as these prerequisites to class certification are met, a case should be allowed to proceed on behalf of the class proposed by the party.

Syllabus Point 8, *In Re: West Virginia Rezulin Litigation, supra.* "The party who seeks to establish the propriety of a class action has the burden of proving that the prerequisites of Rule 23 of the West Virginia Rules of Civil Procedure have been satisfied." Syllabus Point 6, *Jefferson Cty. Bd. of Educ. v. Educ. Ass'n*, 183 W.Va. 15, 393 S.E.2d 653 (1990). As noted above, the cir-

cuit court found that the appellants failed to meet any of the requirements of Rule 23.

### A. Breach of Contract Claims

Distilled to its essence, the appellants' complaint makes two essential claims, breach of contract and employment discrimination. A significant basis for the circuit court's denial of class certification on the appellants' breach of contract claims was its finding that the proposed class failed to meet the Rule 23(a) requirements of commonality and typicality. Specifically, the circuit court found that,

> there are aspects of the claims that would appear to anticipate individualized proof (e.g., employee duress with respect to the releases; detrimental reliance upon employer promises of continued employment; the discrimination claims). The Court is also concerned that proof of oral representations (the alleged promises of continued employment were oral and were made at different company meetings by different sets of managers/company agents and heard by different subsets of employees) could deteriorate into a number of minitrials. The need to receive individualized proof as to certain claims, or aspects of certain claims, could present management problems for the Court.

In regards to the typicality requirement, the circuit court again opined,

> As noted above, Defendants point to the need for the Court to receive individualized proof in litigating, for example, the breach of contract issue, as to the extent of any detrimental reliance upon an oral express or implied promise of continued employment. . . .
>
> Under such circumstances the Court is unable to conclude that the issues raised in the lawsuit satisfy the commonality and typicality requirements[.]

 The Supreme Court has characterized the commonality and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure as follows:

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157–58 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740, 750 n. 13 (1982). "The typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir.1998), quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir.1997). This Court recently considered at length Rule 23 of the West Virginia Rules of Civil Procedure in *In Re: West Virginia Rezulin Litigation, supra.* We held in Syllabus Points 11, 12, and 13 of that opinion:

> 11. The "commonality" requirement of Rule 23(a)(2) of the *West Virginia Rules of Civil Procedure* [1998] requires that the party seeking class certification show that "there are questions of law or fact common to the class." A common nucleus of operative fact or law is usually enough to satisfy the commonality requirement. The threshold of "commonality" is not high, and requires only that the resolution of common questions affect all or a substantial number of the class members.
>
> 12. The "typicality" requirement of Rule 23(a)(3) of the *West Virginia Rules of Civil Procedure* [1998] requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." A representative party's claim or defense is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. Rule 23(a)(3) only requires that the class representatives'

claims be typical of the other class members' claims, not that the claims be identical. When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment.

13. The "adequacy of representation" requirement of Rule 23(a)(4) of the *West Virginia Rules of Civil Procedure* [1998] requires that the party seeking class action status show that the "representative parties will fairly and adequately represent the interests of the class." First, the adequacy of representation inquiry tests the qualifications of the attorneys to represent the class. Second, it serves to uncover conflicts of interest between the named parties and the class they seek to represent.

■■■■■ Concerning the establishment of a contract, this Court has held that "[t]he fundamentals of a legal 'contract' are competent parties, legal subject-matter, valuable consideration, and mutual assent. There can be no contract, if there is one of these essential elements upon which the minds of the parties are not in agreement." Syllabus Point 5, *Virginian Export Coal Co. v. Rowland Land Co.*, 100 W.Va. 559, 131 S.E. 253 (1926). Further,

> It is elementary that mutuality of assent is an essential element of all contracts. *Wheeling Downs Racing Ass'n v. West Virginia Sportservice, Inc.*, 158 W.Va. 935, 216 S.E.2d 234 (1975). In order for this mutuality to exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other. Both the offer and acceptance may be by word, act or conduct that evince the intention of the parties to contract. That their minds have met may be shown

by direct evidence of an actual agreement or by indirect evidence through facts from which an agreement may be implied. *See Lacey v. Cardwell*, 216 Va. 212, 217 S.E.2d 835 (1975); *Charbonnages de France v. Smith*, 597 F.2d 406, 415–416 (4th Cir. 1979).

*Bailey v. Sewell Coal Co.*, 190 W.Va. 138, 140–41, 437 S.E.2d 448, 450–51 (1993). In regards to employment contracts, this Court has held that "[a]n oral promise which has as its effect the alteration of an 'at will' employment relationship must contain terms that are both ascertainable and definitive in nature to be enforceable." Syllabus Point 1, *Sayres v. Bauman*, 188 W.Va. 550, 425 S.E.2d 226 (1992).

■■■■■ The appellants' contract claims essentially are based on the allegation that several members of Imation management verbally promised continued employment if the employees perfected a negative no process plate.[8] A significant problem with the appellants' contract claims is that the alleged oral promises of continued employment apparently were made by different members of management at different times to different employees. In addition, the appellants' recollections of the nature of the alleged oral promises differ. As the court opined in *Broussard*, 155 F.3d at 341,

> The oral nature of [individualized representations] makes them a particularly shaky basis for a class claim. Fifth Circuit caselaw even suggests a *per se* prohibition against class actions based on oral representations. *See Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880, 882–83 (5th Cir.1973). As the Seventh Circuit has indicated, "claims based substantially on oral rather than written communications are inappropriate

---

8. In addition, Count III of the appellees' amended complaint alleges breach of a written contract and Count VI alleges wrongful discharge. Both of these are based on the terms of an employee handbook. However, there appears to be a lack of consensus among the appellants concerning the significance of the handbook. For example, when questioned during a deposition whether she read any provision in the handbook as guaranteeing Imation or 3M employees lifetime employment, Appellant Gwendolyn Shells responded, "There are none that I can see

here." Appellant Edgar Carter testified in a deposition that he just did not know where in the handbook it promised continued employment. Further, Appellant Margaret Ways stated in an affidavit and deposition testimony that employees of Imation were told to follow the guidelines in the 3/M handbook, and that she does not know whether the handbook promised continued employment. Accordingly, we also are unable to find that the circuit court abused its discretion in denying certification on these claims.

for treatment as class actions unless the communications are shown to be standardized." *Retired Chicago Police,* 7 F.3d at 597 n. 17.

In order to prove the existence of a valid contract of continued employment, the appellants must present evidence that the terms of the alleged contract were ascertainable and definitive in nature. They also must show that there was mutuality of assent on these terms. Because the bulk of the appellants' breach of contract claims rests upon alleged individual oral representations made by various members of management, we agree with the circuit court that individualized evidence as to the specific circumstances surrounding the alleged promises is required. Accordingly, we conclude that the circuit court did not abuse its discretion when it ruled that the appellants' breach of contract claims do not meet the commonality and typicality requirements of Rule 23(a).

### B. Employment Discrimination Claims

In their employment discrimination claims, the appellants allege discrimination based on race, gender, and age. In support of their claims, they assert that Spectratech hired no African–American workers of the approximately 17 employed by 3M/Imation, only three women out of the approximately 47 who worked at the 3M/Imation plant, and excluded from employment a disproportionate number of older workers.

A case which is instructive in deciding the propriety of class certification in discrimination claims is *General Telephone Co. of Southwest v. Falcon, supra.* In *Falcon,* the named plaintiff was a Mexican–American whose only personal claim was for an allegedly discriminatory denial of a promotion. On his class claims, the plaintiff sought to challenge a wide variety of discriminatory employment practices including hiring. The Supreme Court held that a plaintiff could not maintain a class action on behalf of both employees who were denied promotions and applicants who were denied employment. This decision was based on the reasoning that,

[c]onceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory

grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims. For respondent to bridge that gap, he must prove much more than the validity of his own claim. Even though evidence that he was passed over for promotion when several less deserving whites were advanced may support the conclusion that respondent was denied the promotion because of his national origin, such evidence would not necessarily justify the additional inferences (1) that this discriminatory treatment is typical of petitioner's promotion practices, (2) that petitioner's promotion practices are motivated by a policy of ethnic discrimination that pervades petitioner's Irving division, or (3) that this policy of ethnic discrimination is reflected in petitioner's other employment practices, such as hiring, in the same way it is manifested in the promotion practices. These additional inferences demonstrate the tenuous character of any presumption that the class claims are "fairly encompassed" within respondent's claim.

*Id.,* 457 U.S. at 157–58, 102 S.Ct. at 2370–71, 72 L.Ed.2d at 750–51. The Supreme Court reiterated that the requirements of Rule 23(a) "limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.,* 457 U.S. at 156, 102 S.Ct. at 2370, 72 L.Ed.2d at 749 (*quoting General Telephone Co. of Northwest v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319, 330 (1980)). "The primary significance of the *Falcon* holding ... is that plaintiffs in Title VII class actions, like plaintiffs in all class actions, must meet the requirements of Rules 23(a)." *Sheehan v. Purolator, Inc.,* 103 F.R.D. 641, 647 (E.D.N.Y. 1984).

The court in *Sheehan* applied the principles of *Falcon* where two former employees and one present employee brought a

Title VII [9] sex discrimination action against a common employer and moved for class certification. The court noted that to bridge the conceptual gap mentioned in *Falcon*, "courts in Title VII actions after *Falcon* have required that the individual plaintiffs establish that there are aggrieved persons in the purported class, primarily through affidavits from employees alleging discriminatory treatment, or other evidence establishing the existence of an aggrieved class." *Sheehan*, 103 F.R.D. at 648 (citations omitted). In *Sheehan*, the plaintiffs relied, in part, on statistics comparing job titles, salaries, and fringe benefits received by male and female employees. The court, however, rejected these statistics as establishing an aggrieved class of female employees because,

> [t]he statistics do not offer the relevant comparisons of similarly situated female and male employees (i.e., females and males with the same qualifications and experience), nor do the statistics alone indicate that other female employees feel aggrieved. Affidavits from individual employees are needed to flesh out these statistics by particularizing instances where females were discriminated against in favor of similarly situated males.

*Id.* at 649.

When we apply the reasoning in *Falcon* and *Sheehan* to the instant case, we note that the appellants offer as evidence to support their discrimination claim that Spectratech hired none of the 17 African–Americans who worked at Imation, three of the 47 women who worked at Imation, and few older workers. As in *Sheehan*, these numbers do not establish that there are aggrieved persons, other than the appellants, in the aggrieved class. Specifically, the numbers do not indicate how many women, older persons, or African–American former employees of Imation, other than those who are appellants herein, feel aggrieved by Spectratech's hiring decisions. In other words, it is not indicative of how many African–Americans, women, or older workers were qualified for the jobs at Spectratech or how many expressed an interest in or actively pursued employment at Spectratech. Absent such evidence, we conclude that the appellants have failed to show the existence of an aggrieved class that meets the requirements of Rule 23(a).

In addition, in order to prove commonality, typicality, or adequate representation in employment discrimination claims, the appellants must show not only common race, gender, or age with members of the proposed class, but also common qualifications and work experiences. Otherwise, it cannot be shown that the resolution of common questions affect all or a substantial number of class members. Accordingly, we are unable to conclude that the circuit court abused its discretion in denying the appellants' motion for class certification on their employment discrimination claim.[10]

Finally, in considering the issues raised by the appellants, we are mindful that,

> Despite the potential benefits of class actions, there remains an overarching concern—that absentees' interests are being resolved and quite possibly bound by the operation of res judicata even though most of the plaintiffs are not the real parties to the suit. The protection of the absentees' due process rights depends in part on the

**9.** The appellants have brought their employment discrimination claims under the West Virginia Human Rights Act, not federal Title VII. However, this Court has "consistently held that cases brought under the West Virginia Human Rights Act, W.Va.Code, 5–11–1, *et seq.*, are governed by the same analytical framework and structures developed under Title VII, at least where our statute's language does not direct otherwise." *Barefoot v. Sundale Nursing Home*, 193 W.Va. 475, 482, 457 S.E.2d 152, 159 (1995) (citations omitted), *modified on other grounds by Dodrill v. Nationwide Mut. Ins. Co.*, 201 W.Va. 1, 491 S.E.2d 1 (1996).

**10.** In their amended complaint, the appellants also allege a civil conspiracy between Imation and Spectratech to preclude the hiring of the appellants by Spectratech in violation of the West Virginia Human Rights Act, and unlawful reprisal in violation of W.Va.Code § 5–11–9(7) based on the fact that Imation brought an action against the appellants in federal court. We find that the circuit court did not abuse its discretion in denying class certification of these claims for essentially the same reasons stated in our discussion of the appellants' employment discrimination claims.

extent... that the class representatives have interests that are sufficiently aligned with the absentees to assure that the monitoring serves the interests of the class as a whole. In addition, the court plays the important role of protector of the absentees' interests, in a sort of fiduciary capacity, by approving appropriate representative plaintiffs[.]

\* \* \* \* \* \*

The drafters designed the procedural requirements of Rule 23, especially the requisites of subsection (a), so that the court can assure, to the greatest extent possible, that the actions are prosecuted on behalf of the actual class members in a way that makes it fair to bind their interests. The rule thus represents a measured response to the issues of how the due process rights of absentee interests can be protected and how absentees' represented status can be reconciled with a litigation system premised on traditional bipolar litigation.

*In re General Motors Corp. Pick-Up Truck Fuel Tank,* 55 F.3d 768, 784–85 (3rd Cir. 1995). Thus, it is of the utmost importance that the requirements of Rule 23 be met in order to protect the rights of non-appearing class members. In the instant case, the circuit court found, in its discretion, that the appellants failed to meet the Rule 23 requirements. In other words, the circuit court found an insufficient guarantee that the due process rights of the non-appearing former employees of Imation would be sufficiently protected in a class action. We do not believe that the circuit court abused its discretion.

### III.

### CONCLUSION

For the reasons stated above, we affirm the June 5, 2002, order of the Circuit Court of Jefferson County that denied the appellants' motion for class certification.

Affirmed.

Justice McGRAW dissents and reserves the right to file a dissenting opinion.

McGRAW, Justice, dissenting:

What the plaintiffs allege in this case is that a company decided it wanted to reduce its long-term obligations by shedding many of its long-term employees. According to the plaintiffs below, when the plant was still operating under 3M, about 17 employees were black, and about 40 were women, and many were over age 40. The plaintiffs claim that after the plant was "spun off" to Imation and then closed and reopened as Spectratech, approximately three women and zero black people worked there, and the percentage of older workers had dropped significantly. Had 3M simply announced it was laying off most women, most older men, and all blacks, it would have been met with outrage. But now that this result has been reached via different methods, outrage is in short supply.

The majority cites several new syllabus points from the *Rezulin* case, including those on commonality and typicality, but then finds that the plaintiffs in this case do not meet those tests. I disagree. As quoted by the majority: "A common nucleus of operative fact is usually enough to satisfy the commonality requirement. The threshold of 'commonality' is not high, and requires only that the resolution of common questions affect all or a substantial number of class members." Syl. pt. 11, in part, *In Re: West Virginia Rezulin Litigation,* 214 W.Va. 52, 585 S.E.2d 52 (2003). Here, the entire potential class worked at the plant, and all have ended up without their jobs as a result of the company's efforts to reduce its workforce. I believe that the common question of whether or not the employers' activity violated our Human Rights Act is sufficient to meet this threshold.

The majority then quotes the *Rezulin* again, noting that "Rule 23(a)(3) only requires that the class representatives' claims be typical of the other class members' claims, not that the claims be identical. When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment." *Id.* at syl. pt. 12, in part. While there are factual variations in this case relating to what should have protected the plaintiffs (*i.e.,* race, sex, or age), there is no

variation in the damages suffered by the plaintiffs; all are without their former jobs. Furthermore, all of their claims are based on the same remedial theory—that an employer must comply with our Human Rights Act when terminating employees.

This Court has explained before that, though a given employee may not be member of a protected class, he or she may still join a lawsuit filed by fellow workers who are members of a protected class and who claim discrimination under our Human Rights Act. That is to say, that if an employer fires a few young male employees to make it more difficult to prove the employer is in fact firing all of its older male employees in violation of the Human Rights Act, those younger employees are still victims of discrimination:

> Collateral victims of discrimination are entitled to relief under West Virginia Code § 5–11–9(7) (1999) upon establishing that the employer has engaged in an unlawful discriminatory practice, such as activities designed to cause economic loss. Such collateral victims are properly included as Plaintiffs in a cause of action initiated by other victims of discrimination under the West Virginia Human Rights Act.

Syl. pt. 10, *Bailey v. Norfolk & Western Ry. Co.*, 206 W.Va. 654, 527 S.E.2d 516 (1999). As in *Bailey*, the plaintiffs in this case are claiming that the employer attempted to mask illegal, discriminatory deeds with apparently legal and non-discriminatory actions. What plaintiffs claim may or may not be true—that is a question for the finder of fact. However, they do not have to prove the merits of their claim to have their class certified.

I believe the plaintiffs have demonstrated sufficient commonality and typicality to have their class certified by the lower court. Therefore, I must respectfully dissent to the majority opinion.