# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**STATE EX REL. U-HAUL COMPANY**
**OF WEST VIRGINIA,**
**Petitioner,**

**FILED**
**May 21, 2018**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs. No. 17-1052** (Kanawha County No. 11-C-1426)

**THE HONORABLE JOANNA I. TABIT,**
**JUDGE OF THE CIRCUIT COURT OF**
**KANAWHA COUNTY; AMANDA FERRELL;**
**JOHN STIGALL; AND MISTY EVANS,**
**Respondents.**

## MEMORANDUM DECISION

The petitioner (defendant below), U-Haul Co. of West Virginia ("U-Haul"), seeks a writ of prohibition to either (1) prevent the enforcement of the circuit court's class certification order on the basis that the court erred as a matter of law in finding the respondents (plaintiffs below), Amanda Ferrell, John Stigall, and Misty Evans (collectively "the respondents"), met the commonality and predominance requirements under Rule 23 of the West Virginia Rules of Civil Procedure, or (2) prevent the enforcement of such order pending the entry of a more thorough order addressing the class certification prerequisites.[1] Upon review of the parties' arguments, we affirm the circuit court's certification order. Inasmuch as this case does not present a new or significant question of law, and having considered the applicable standard of review and the record presented, this matter is properly disposed of through this memorandum decision in accordance with Rule 21(c) of the Rules of Appellate Procedure.

## I. Factual and Procedural Background

On August 19, 2011, the respondents filed this putative class action against U-Haul alleging breach of contract, fraudulent concealment, and violations of the West Virginia

---

[1]The parties are represented by counsel: Thomas R. Goodwin, W. Jeffrey Vollmer, and Elise N. McQuain for U-Haul, and Anthony J. Majestro, James C. Peterson, and Aaron L. Harrah for the respondents.

1

Consumer Credit and Protection Act ("WVCCPA"). This case was previously before this Court when U-Haul sought a writ of prohibition to set aside the circuit court's order denying U-Haul's motion to compel arbitration. We declined to issue the writ, and the case was remanded to the circuit court. *State ex rel. U-Haul Co. of West Virginia v. Zakaib* ("*U-Haul I*"), 232 W.Va. 432, 752 S.E.2d 586 (2013).

Following the remand in *U-Haul I*, the parties engaged in class discovery after which the respondents filed a motion to certify their claims as a class action. Following an evidentiary hearing on the certification motion, the circuit court entered a twenty-seven-page order granting the motion and certifying a class of U-Haul customers who had declined to make a contribution to the "Conservation Fund"[2] during the process of renting a truck from U-Haul, but who were nonetheless charged an "Environmental Fee,"[3] as more fully addressed below.

This environmental fee was not required by a governmental or regulatory body; rather, it was implemented by U-Haul as a company policy in January 2008. U-Haul customers were automatically charged an environmental fee of $1.00 to $5.00 per day for in-town truck rentals and $5 for one-way truck rentals.[4] During the certification hearing, U-Haul's counsel explained that U-Haul made this environmental fee a "mandatory added item," using the monies collected through this fee to support its "long-running sustainability" program. This fee appears as a line-item charge on the equipment contract. An explanation of the environmental fee is provided by U-Haul only if a customer asks about it. As discussed herein, the respondents offered evidence that even when a customer asked about the fee, incorrect information was provided.

U-Haul's Rule 30(b)(7) corporate representative testified during her deposition that U-Haul did not include the amount of the environmental fee in providing quotes for rentals because U-Haul wanted only its rental rates to be considered by customers engaged in

---

[2]U-Haul states that the "Conservation Fund" is a private charitable organization that partnered with U-Haul to promote donations to natural resources and land protection.

[3]The respondents alleged in their complaint that U-Haul attempts to hide or suppress its imposition of the environmental fee by providing the customer with the option to decline a donation to the "Conservation Fund." They further alleged that U-Haul's imposition of the charge as an "environmental fee" imparts the notion that "it is some mandatory tax or pass-through, not a charge imposed by defendant to defray overhead."

[4]It appears from the appendix record that from 2008 through 2012, more than $313,000 was generated by the "environmental fee" from rentals in West Virginia.

comparative shopping with U-Haul's competitors.  This representative further testified that U-Haul was concerned that the "environmental fee" was not "communicated well." Evidence was also presented regarding a U-Haul policy whereby a refund of the "environmental fee" could be made upon a customer's request, but this policy is not voluntarily conveyed to customers.

U-Haul rental reservations can be made telephonically, over the internet, or in person at a U-Haul center or dealer.  When visiting a U-Haul center, a customer can make a reservation using an electronic terminal[5] where information is provided on screens concerning rental equipment and the terms and conditions of the equipment contract.  One of the screens provides the customer with the opportunity to make a voluntary donation to the "Conservation Fund."  Another screen displays a list of itemized charges and, alongside the term "Adjustments" is a hyperlink titled "Click More to see details."  If a customer clicks on that link, a new screen appears that displays the words "Environmental Fee" and a monetary amount.  U-Haul alleges that if a customer were to ask a U-Haul representative for more information about the environmental fee, the sales representative could use a computer to access a description of the fee that the representative could then share with the customer. Although some U-Haul locations do not use electronic terminals, the respondents allege that the rental process proceeds in a similar manner to the extent that an environmental fee is automatically added to the customer's bill, which is unrelated to the optional donation to the "Conservation Fund."

When making a reservation through www.uhaul.com, U-Haul alleges that the customer can learn about the environmental fee by searching for it on a "website-specific search engine" or by clicking on a link near the end of the online reservation process, which takes the customer to a screen with a description of the fee.  Telephonic reservations are made by a customer speaking with a U-Haul representative who views screens similar to those available online. A customer can also reserve a truck through a U-Haul dealer, whose employee uses a computer program called "WebBEST" that only the employee views.  U-Haul states that the WebBEST program includes a "clickable" prompt titled "What is the Environmental Protection Fee?"

Regarding the respondents' rental experiences, Amanda Ferrell made three truck rentals by telephone.  She testified during her deposition that her second truck rental was made at a U-Haul facility where she had to sign a small, electronic pad on which she thought

_____

[5]U-Haul describes these as "dumb" terminals because they are not connected to the Internet.

3

she had declined the environmental fee.[6] After signing the electronic pad, she was handed a folder that contained a one-page contract with itemized charges, which she later reviewed and noted that she had been charged a $3.00 "Environmental Fee." Ms. Ferrell wrote a letter to U-Haul in which she complained about this fee. When Ms. Ferrell rented a U-Haul truck a third time, she proceeded through a similar rental process.[7]

During John Stigall's deposition, he testified concerning his telephone reservations. He did not have any interaction with a U-Haul dealer or center employee regarding the environmental fee in those rental experiences. When he looked at his paperwork sometime later, he saw that he had been charged a $5.00 "Environmental Fee," although he had declined all optional environmental donations. He testified that he wrote a letter to U-Haul attempting to recover the $5.00 fee, but received no response to his letter. After the instant litigation was filed, he accompanied a friend who was renting a truck from U-Haul and asked about the environmental fee. A U-Haul employee responded it was a "government fee."

Respondent Misty Evans testified during her deposition that she first reserved a truck by calling a U-Haul center. She did not have any interaction with any U-Haul employees concerning the environmental fee but later noticed it on her bill after her first truck rental. She was uncertain regarding how her second truck reservation was made, although the equipment contract for that transaction listed as a line item an estimated "Environmental Fee" of $1.00, which was later included on the finalized contract when she returned the truck. She was unaware that this fee had been added to her bill until after she had returned the rental.

A class certification hearing was held after which the circuit court entered an order on November 2, 2017, finding the respondents had met the prerequisites for class certification under Rule 23(a).[8] The circuit court noted that "the dispositive question is not

<hr>

[6]Although Ms. Ferrell used the words "environmental fee," she was presumably referring to the optional donation to the "Conservation Fund" because a customer cannot decline the "environmental fee" that is automatically charged.

[7]Ms. Ferrell's testimony also reflects that in 2015, after the inception of this lawsuit, she attempted to rent a vehicle from U-Haul. When she told the U-Haul representative that she wanted to decline the environmental fee, she was told that it was mandatory. When she asked what the fee was used for, she was told that it was used for "tires, oil and things of that nature."

[8]West Virginia Rule of Civil Procedure 23(a) provides:

(continued...)

whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 have been met." Syl. Pt. 7, in part, *In re W.Va. Rezulin Litig.*, 214 W.Va. 52, 585 S.E.2d 52 (2003).

Regarding the numerosity requirement under Rule 23(a)(1), the circuit court stated that the class must be so numerous that joinder of all members is impracticable; however, there is no "magic minimum number[.]" *Rezulin*, 214 W.Va. at 65, 585 S.E.2d at 65 (quotation and citation omitted). The circuit court found that there are approximately 238,040 potential class members, making joinder impractical. *See id.* at 56-57, 585 S.E.2d at 56-57, syl. pt. 9, in part ("The numerosity provision . . . requires that a class be so numerous that joinder of all of its members is 'impracticable.' It is not necessary to establish that joinder is impossible; rather, the test is impracticability.").

In addressing the commonality prerequisite under Rule 23(a)(2), the circuit court again looked to *Rezulin* for guidance:

> "[C]ommonality" . . . requires that the party seeking class certification show that "there are questions of law or fact common to the class." A common nucleus of operative fact or law is usually enough to satisfy the commonality requirement. The threshold of "commonality" is not high, and requires only that the resolution of common questions affect all or a substantial number of class members.

214 W.Va. at 57, 585 S.E.2d at 57, syl. pt. 11, in part. The circuit court observed that "(c)ommonality requires that class members share a single common issue"; that "not every issue in the case must be common to all class members"; and that "one significant common question of law or fact will satisfy this requirement." *Id.* at 67, 585 S.E.2d at 67 (quotation and citation omitted). Upon finding that the "[p]laintiffs have alleged the existence of a common business practice that affects putative class members in a like manner as the named Plaintiffs[,]" the circuit court identified the primary common questions of fact as "whether

---

[8](...continued)
*Prerequisites to a class action.—* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

the Defendant's business conduct constitutes a breach of contract, fraudulent concealment and/or an unfair or deceptive act or practice in violation of the WVCCPA." The circuit court further found that these "common questions of fact give rise to precisely the same common question of law" and "outweigh any potential individual claims that each individual member of the class may have against Defendant."

As for the typicality prerequisite under Rule 23(a)(3), the circuit court again relied upon *Rezulin*:

> "[T]ypicality" . . . requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." A representative party's claim or defense is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. Rule 23(a)(3) only requires that the class representatives' claims be typical of the other class members' claims, not that the claims be identical. When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment.

214 W.Va. at 57, 585 S.E.2d at 57, syl. pt. 12, in part. The circuit court found that "all of the class members' claims raise from the same business practice and course of conduct that underlies the named Plaintiffs' claims" and that the "harm suffered by the named Plaintiffs may "differ in degree from that suffered by other members of the class so long as the harm suffered *is of the same type*." (Citations omitted). The circuit court concluded that "the claims of the named Plaintiffs are typical of the putative class."

The final prerequisite under Rule 23(a) is whether "the representative parties will fairly and adequately protect the interests of the class." *See Rezulin*, 214 W.Va. at 57, 585 S.E.2d at 57, syl. pt. 13, in part ("The 'adequacy of representation' requirement . . . requires that the party seeking class action status show that the 'representative parties will fairly and adequately represent the interests of the class.' First, the adequacy of representation inquiry tests the qualifications of the attorneys to represent the class. Second, it serves to uncover conflicts of interest between the named parties and the class they seek to represent."). The circuit court determined that this prerequisite was met because "each individual and class claim flows from the same conduct of Defendant" and that the interests of the class and of the respondents are "coincident since both seek to prove the existence of the Defendant's practice of breach of contract, fraudulent concealment, and/or unfair or deceptive acts or practices in violation of the WVCCPA." There was no challenge as to the ability of the respondents' counsel to represent the class.

Having determined that Rule 23(a) prerequisites were met, the circuit court next addressed the predominance and superiority requirements under Rule 23(b)(3) of the West Virginia Rules of Civil Procedure.[9] It found that the questions of law or fact common to the members of the class predominated over any questions affecting only individual members, such that a class action was superior to other available methods for the fair and efficient adjudication of the controversy. As the circuit court explained,

> "[t]he predominance criterion in Rule 23(b)(3) is a corollary to the 'commonality' requirement found in Rule 23(a)(2). While the 'commonality' requirement simply requires a showing of common questions, the 'predominance' requirement requires a showing that the common questions of law or fact outweigh individual questions." *In re W.Va. Rezulin Litig.*, 214 W.Va. at 71, 585 S.E.2d at 71.

The circuit court observed that the primary question for predominance is "whether 'adjudication of the common issues in the particular suit has important and desirable advantages of judicial economy compared to all other issues, or when viewed by themselves." (citation omitted). Explaining further, the circuit court stated that

> [a]n action that satisfies the Rule 23(a) requirements may also be maintained as a class action under Rule 23(b)(3) if the trial court finds "that the questions of law or fact common to all members of the class predominate over any questions affecting only individual members," and that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy." W.V.R.C.P. 23(b)(3).

The circuit court concluded that the respondents "easily meet both requirements."

---

[9]*See* W.Va. R. Civ. P. 23(b)(3) ("(b) *Class Actions Maintainable.*—An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition . . . (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.").

In analyzing the respondents' breach of contract claim for predominance, the circuit court observed that

> [a]t issue in this case is U-Haul's policy of failing to adequately disclose or explain the environmental fee to customers who do not ask and do not know to ask (particularly after declining the option of paying an environmental fee [the Conservation Fund] and then failing to correctly explain its policy to those who do ask, including the failure to disclose that such fee can be waived if the customer disagrees.

The circuit court found that there are common legal issues regarding whether U-Haul's policies and actions in charging its customers the environmental fee constitute a breach of contract; that the "common issues outweigh any potential individual claims that each individual member of the class may have against Defendant" and "predominate over any questions affecting only individual class members"; and that the question is what is the best method for the fair and efficient adjudication of a controversy. The circuit court stated that whether U-Haul actually breached the class members' uniform contracts is a question on the merits that is "reserved for another day."

Regarding whether the respondents' fraudulent concealment and WVCCPA violation claims meet the predominance requirement, the circuit court found that

> [e]vidence relating to how and why U-Haul fraudulently concealed, intentionally concealed, suppressed and omitted the information will be answered the same way for all class members. Questions and issues relating to U-Haul's policy of "explain only if asked" coupled with U-Haul's failure to advise its customers of its refund policy and its decision to not include the environmental fee in its base rate for purpose of being competitive when a customer engaged in "comparative shopping" will be answered the same way for all class members, including whether the evidence demonstrates a clear intent to keep its customers in-the-dark about not only the fee itself but the true use of the fee and an understanding on U-Haul's behalf that customers would not willingly pay the environmental fee "but for" its deceptive practices in regard to collecting such fee.

The circuit court determined that "common issues give rise to common questions of law as to whether the Defendant fraudulently concealed information from its consumers and whether the Defendant's conduct constituted a violation of the WVCCPA"; that those "common issues and questions of law outweigh any potential individual claims that each individual member of the class may have against Defendant"; and that the payment of the

8

environmental fee constitutes a "common ascertainable loss" for purposes of the WVCCPA that "does not require individualized, subjective inquiry."

Lastly, the circuit court stated that the superiority requirement under Rule 23(b)(3) "focuses on judicial economy and a comparison of other available alternatives to resolve the controversy." Considering factors such as the provision of a forum for small claims and the objective of deterrence, the circuit court found that "the alternative of numerous individual actions was more troubling and untenable" than the challenge attendant to a class action. It concluded that "there is simply no better method available for the adjudication of the putative class members' claims."

Based on its findings and conclusions, the circuit court defined the putative class, as follows:

> U-Haul customers for whom U-Haul has a contract reflecting their rental of a truck between March 1, 2008, and the filing of the motion for class certification who rented a truck from U-Haul and declined to make a donation to the "Conservation Fund" (and had not made such a donation in connection with any other prior contract) and were charged and paid the environmental fee. Excluding from the class any officers and agents of U-Haul or subsidiary of the Defendant, any attorney for such Defendant, any attorney for any Plaintiff, and any judicial officer who presides over this matter.

The circuit court appointed and approved the respondents as the putative class representatives. It also provided that the certification, "like all class certifications, is conditional and may be reconsidered if it proves to be improvident." U-Haul seeks to prohibit the enforcement of the circuit court's class certification order.

## II. Standard of Review

U-Haul seeks a writ of prohibition to prevent the enforcement of the circuit court's class certification order either because it is erroneous as a matter of law or pending the circuit court's entry of a more thorough order. We have previously held that "an order awarding class action standing is . . . reviewable . . . only by writ of prohibition." Syl. Pt. 2, in part, *McFoy v. Amerigas, Inc.*, 170 W.Va. 526, 295 S.E.2d 16 (1982); *see also* Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996) (setting forth factors to be considered in determining whether writ of prohibition should issue). We also give deference to the circuit court's certification decision. *See Rezulin*, 214 W.Va. at 56, 585 S.E.2d at 56, syl. pt. 1, in part ("This Court will review a circuit court's order granting or denying a motion for class certification . . . under an abuse of discretion standard."). Further, "[a]n abuse of

9

discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court." *Id.*, 214 W.Va. at 61, 585 S.E.2d at 61 (quotation and citation omitted). Accordingly, we proceed to consider whether the circuit court has abused its discretion in certifying the class and whether a writ of prohibition should issue.

## III.  Discussion

U-Haul challenges the circuit court's findings of commonality and predominance, as well as the thoroughness of the certification order. We address each, in turn, below.

### A.  Commonality

U-Haul asserts that charging all members of the purported class an environmental fee is insufficient to establish commonality. U-Haul relies, in part, upon *Erie Insurance Property and Casualty Co. v. Nibert* ("*Erie II*"), No. 16-0884, 2017 WL 564160 (W.Va. Feb. 13, 2017) (memorandum decision), wherein we concluded that the circuit court's finding–"that all purported class members would have to litigate the issue of whether Erie used an underinsured motorist coverage form that was not in compliance with the form required by the Insurance Commissioner"–did not satisfy the common question of fact or law for class certification. *Id.* at *4. U-Haul also relies upon *Ways v. Imation Enterprises Corporation*, 214 W.Va. 305, 589 S.E.2d 36 (2003), wherein this Court found commonality was not met because of the individualized nature of the plaintiffs' breach of contract claims, which were based on "alleged oral promises of continued employment . . . made by different members of management at different times to different employees." *Id.* at 313, 589 S.E.2d at 44. Although each of the respondents paid the environmental fee, U-Haul asserts that the only way they can prove their claims is through individualized proof, making those claims unsuited for class-wide determination.

The respondents counter that they have met the commonality requirement. They assert that the alleged existence of a common business practice that affects the putative class members in a manner similar to them creates a nucleus of operative facts and law common to the class. We agree.

Class relief is "peculiarly appropriate. . . . [when] [t]he issues involved are common to the class as a whole[] [and] [t]hey turn on questions of law applicable in the same manner to each member of the class." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the majority stated that "[w]hat matters to class certification . . . is . . . the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation"; that "[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers"; and that "for

10

purposes of Rule 23(a)(2) [e]ven a single [common] question will do." *Id.* at 350, 359 (internal citations and quotation marks omitted). As a leading scholar on class actions observed, the Supreme Court ended its discussion of commonality in *Dukes* "by noting that the plaintiffs had failed to demonstrate a 'companywide discriminatory pay and promotion policy,' which implied that such a company-wide policy would, in the standard case, satisfy the commonality requirement." 1 William B. Rubenstein, Newberg on Class Actions, § 3:19, at 236 (5th Ed. 2011). Here, the companywide policy was U-Haul's business practice of charging an environmental fee that is not disclosed in the base price quoted for the rental but which is later automatically charged regardless of whether a customer has declined the open and express option of donating to the "Conservation Fund."

Again, "[t]he threshold of 'commonality' is not high, and requires only that the resolution of common questions affect all or a substantial number of the class members[,]" *Rezulin*, 214 W.Va. at 57, 585 S.E.2d at 57, syl. pt. 11, in part, and "not every issue in the case must be common to all class members." *Id.* at 67, 585 S.E.2d at 67 (internal quotations and citation omitted). As reflected above, the respondents' rental experiences and the deposition testimony of U-Haul's corporate representative revealed that U-Haul collected an optional voluntary customer donation to the "Conservation Fund;" automatically charged customers an unrelated environmental fee; did not include the environmental fee in the rental quote provided to customers because U-Haul wanted to be competitive when customers comparison shopped; and explained the environmental fee only if a customer asked about it. As for the latter, the respondents presented evidence to support their theory that U-Haul's customer service agents did not correctly explain the fee even when a customer asked.

Although U-Haul contends that this matter is not suited for class resolution because there will be individualized issues, we have previously observed that

> "[i]ndividual issues will often be present in a class action, especially in connection with individual defenses against class plaintiffs, rights of individual class members to recover in the event a violation is established, and the type or amount of relief individual class members may be entitled to receive. . . . The fact that class members must individually demonstrate their right to recover, or that they may suffer varying degrees of injury, will not bar a class action; nor is a class action precluded by the presence of individual defenses against class plaintiffs."

*Id.*, 214 W.Va. at 67, 585 S.E.2d at 67 (quoting 1 Alba Conte and Herbert Newberg, Newberg on Class Actions, § 3:12, at 314-315 (4th Ed. 2002)). Moreover, the circuit court acknowledged the possibility of individual issues, providing in its certification order that "[i]f

11

conflicts or management difficulties arise during the merits phases of this case, the Court may choose to exercise its discretion and divide and appoint sub-classes."

For these reasons, we find there was no abuse of discretion in the circuit court's commonality ruling.

## B. Predominance

U-Haul asserts that the circuit court's predominance analysis demonstrates there are conflicting and individualized determinations that support rejecting class certification. U-Haul contends that without individualized, extrinsic evidence to show why the line item environmental fee is otherwise contradicted, there is no breach of contract claim. As for the fraud and WVCCPA claims, U-Haul asserts that the circuit court's findings were contradictory and weigh against class certification. In short, U-Haul maintains that the circuit court's predominance analysis "raises more questions than it answers and weighs against class certification."

Expressing a countervailing view, the respondents assert that U-Haul ignores the common questions concerning U-haul's corporate policies and conduct which outweigh individual questions. *See Rezulin*, 2014 W.Va. at 71, 585 S.E.2d at 71 (observing that predominance "requires a showing that the common questions of law or fact outweigh individual questions"). Even if face-to-face communications are involved in carrying out a corporate policy, the respondents contend that class certification is not defeated, particularly where one of U-Haul's corporate policies "directs the non-disclosure of essential information." The respondents maintain that all of their claims are based on the advertised rental fee, the timing of the provision of the written rental contract, and the lack of communication regarding the environmental fee. Because the lack of communication was based on company policy, the respondents assert that it was "standardized." *See Ways*, 214 W.Va. at 313, 589 S.E.2d at 44 ("[C]laims based substantially on oral rather than written communications are inappropriate for treatment as class actions unless the communications are shown to be standardized.").

As we have previously explained, "[t]he predominance criterion . . . is a corollary to the 'commonality' requirement . . . [and] requires a showing that the common questions of law or fact outweigh individual questions." *Rezulin*, 214 W.Va. at 71, 585 S.E.2d at 71. In deciding predominance, the "central question [] [is] whether 'adjudication of the common issues in the particular suit has important and desirable advantages of judicial economy compared to all other issues, or when viewed by themselves.' 2 *Newberg on Class Actions, 4th Ed.*, § 4.25 at 174." *Rezulin*, 214 W.Va. at 72, 585 S.E.2d at 72. Moreover,

[t]he predominance requirement does not demand that common issues be dispositive, or even determinative; it is not a comparison of the amount of court time needed to adjudicate common issues versus individual issues; nor is it a scale-balancing test of the number of issues suitable for either common or individual treatment. 2 *Newberg on Class Actions, 4th Ed.*, § 4:25 at 169-173. Rather, "[a] single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." *Id.* at 172. The presence of individual issues may pose management problems for the circuit court, but courts have a variety of procedural options under Rule 23(c) and (d) to reduce the burden of resolving individual damage issues, including bifurcated trials, use of subclasses or masters, pilot or test cases with selected class members, or even class decertification after liability is determined. . . . "That class members may eventually have to make an individual showing of damages does not preclude class certification." *Smith v. Behr Process Corp.*, 113 Wash. App. 306, 54 P.3d 665, 675 (2002) (citations omitted).

*Rezulin*, 214 W.Va. at 72, 585 S.E.2d at 72. As indicated above, here, the circuit court provided that "[i]f conflicts or management difficulties arise during the merits phases of this case, the Court may choose to exercise its discretion and divide and appoint sub-classes."

In specific regard to the breach of contract claim, the circuit court observed that where "the contract at issue is uniform to all class members, courts often find that common issues predominate[.]" Here, the common questions of law and fact concern whether U-Haul failed to perform its contractual obligations to charge the respondents and the class members the base price quoted for their rentals by charging them the "environmental fee," as well as U-Haul's policy not to only explain the environmental fee if asked; its failure to advise customers of its refund policy; and its exclusion of the environmental fee from its base rate for purposes of being competitive. Accordingly, we agree with the circuit court that

Plaintiffs' claims are based on both written communications in terms of the price advertised as the rental fee, the rental contract, the timing of the provision of the written rental contract, and the absence of communications regarding the environmental fee. The Plaintiffs have presented evidence relating to whether the absence of communication was based on company policy, thus standardizing the lack of communication. At issue in this case is U-Haul's policy of failing to adequately disclose or explain the environmental fee to customers who do not ask and do not know to ask (particularly after declining the option of paying an environmental fee) and then failing to

13

correctly explain its policy to those who do ask, including the failure to disclose that such fee can be waived if the customer disagrees.

(Footnote omitted).

Turning to the fraudulent concealment and WVCCPA violation claims, whether the environmental fee was sufficiently disclosed presents common questions of fact and law as to whether such "disclosures" were unconscionable or were in violation of the WVCCPA, particularly where the respondents and class members declined the express option of paying an environmental fee, *i.e.*, the optional donation to the "Conservation Fund." The circuit court correctly determined that evidence concerning the respondents' allegations that U-Haul "fraudulently concealed, intentionally concealed, suppressed and omitted the information" will be answered the same way for all class members. We disagree with U-Haul's contention that individual issues defeat predominance. As the circuit court found, the individual issues raised by U-Haul "relate to causation and reliance in the context of a misrepresentation not an omission which only requires proof that an objective 'reasonable consumer' would not have suffered the loss absent the omission" and that "to the extent that there are individualized damages questions, those can be addressed in subsequent proceedings." The circuit court further found that "whether the evidence demonstrates a clear intent to keep . . . customers in-the-dark about not only the fee itself but the true use of the fee and an understanding on U-Haul's behalf that customers would not willingly pay the environmental fee 'but for' its deceptive practices in . . . collecting such fee" will be answered the same way for all class members. The deposition testimony of U-Haul's Rule 30(b)(7) corporate representative concerning U-Haul's company policies and that of the respondents concerning their rental experiences, all of which is recounted above, support this finding.

Based on the above, we find there was no abuse of discretion in the circuit court's predominance ruling.

### C. Adequacy of the Certification Order

U-Haul asserts that the circuit court erred as a matter of law by failing to issue a thorough order that complies with syllabus point eight of *State of West Virginia ex rel. Chemtall Incorporated. v. Madden*, 216 W.Va. 443, 607 S.E.2d 772 (2004), which provides, in part, that a class action "may only be certified if the trial court is satisfied, after a thorough analysis, that the prerequisites of Rule 23(a) . . . have been satisfied. . . . [T]he class certification order should be detailed and specific in showing the rule basis for the certification and the relevant facts supporting the legal conclusions." U-Haul also relies upon *State ex rel. Erie Insurance Property and Casualty Company v. Nibert* ("*Erie I*"), No. 11-0259 (W.Va. June 14, 2011) (memorandum decision), wherein this Court found that

"[c]onclusory summations, without further explanation, do not constitute the 'detailed and specific . . . showing' required by . . . *Chemtall* and are not sufficient to confer class status."[10] U-Haul also criticizes the circuit court for neither mentioning nor discussing *Erie II*, in which this Court noted that the circuit court in that matter had stated that there were "numerous common questions of law and fact[,]" but then did not set them forth in the certification order.[11] *Id.* at *3-4. U-Haul contends the circuit court's commonality analysis falls short of these parameters; fails to identify specifically the "common business practice" at issue; merely observes that the items U-Haul alleged would require individualized proof were not inapposite to class certification; and neglects to heed Justice Ketchum's dissent in *U-Haul I* in which he expressed his belief, at that time, that the respondents could not establish commonality. *U-Haul I*, 232 W.Va. at 446-47, 752 S.E.2d at 600-01 (Ketchum, J., dissenting).

Disagreeing with U-Haul's criticisms, the respondents assert that the circuit court's certification order is "detailed and specific in showing the [R]ule [23] basis for class certification and the relevant facts supporting the legal conclusions[,]" and that it identified the alleged "common business practice" at issue: "U-Haul has a practice and policy of surreptitiously charging its customers an unquoted and undisclosed 'environmental fee' regardless of whether the customers decline to make a voluntary environmental donation" to the "Conservation Fund." The respondents add that the circuit court did more than merely observe in a footnote that the items cited by U-Haul as requiring individualized proof were not inapposite to class certification; rather, the circuit court discussed the relevant law from *Rezulin*, after which it found that "[t]he individual issues raised by the Defendants relate to causation and reliance in the context of a misrepresentation not an omission which only requires proof that an objective 'reasonable consumer' would not have suffered the loss absent the omission." As for Justice Ketchum's dissent in *U-Haul I*, the respondents state that the issue of "commonality" was neither pending nor argued before the Court in *U-Haul I*; rather, the issue was arbitration. The respondents maintain that the circuit court's detailed findings distinguish the instant matter from *Chemtall* and that the circuit court appropriately relied upon *Rezulin*, the seminal authority on certifying class actions in West Virginia, rather than upon *Erie II*.

---

[10]Following the remand in *Erie I*, the plaintiff amended her complaint; the circuit court again certified a class; and Erie again challenged the certification by seeking a writ of prohibition. In *Erie II*, this Court granted the writ, finding that the proposed class of Erie insureds failed to meet the commonality requirement.

[11]In granting the writ in *Erie II*, we observed that two other cases had "rejected the issue of noncompliance with a statutory form for underinsured motorist coverage as satisfying the commonality requirement for class certification." *Id.* at *4.

Although U-Haul contends that the circuit court's findings are conclusory, our discussion of those findings, as well as the respondents' arguments above, demonstrate the contrary. As the respondents correctly observe, the legal analysis for "commonality" was not altered in *Erie II*. Accordingly, we find that the circuit court did not err as a matter of law by not discussing it. Further, the circuit court was clearly aware of Justice Ketchum's dissent in *U-Haul I*, noting that the majority of this Court did not express similar concerns regarding the feasibility of a class action and that the issue in *U-Haul I* was arbitration—not "commonality."

We agree that our precedent requires a class certification order to contain a thorough and detailed analysis of the Rule 23 requirements for certification and the factual basis for the court's legal conclusions. Our review of the certification order in its entirety, as discussed throughout this memorandum decision, leads us to conclude that the circuit court met these requirements.

## IV. Conclusion

For the reasons set forth above, we decline to issue a writ of prohibition.

Writ Denied.

**ISSUED:** May 21, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

16